RILEY W. EDWARDS v. H. H. PROCTOR ET ALS.
H. H. PROCTOR ET ALS. v. RILEY W. EDWARDS.

(Filed 28 February, 1917.)

**1. Contracts, Executory—Implied Promise—Mutual Rights.**

Parties to an executory contract for the performance of some act to be done in the future impliedly promise not to do anything to the harm or the prejudice of the other inconsistent with their contractual relations; and the promisee has an inchoate right to the enforcement of his bargain, which becomes complete when the time for such performance arives and the promisor prevents it.

**2. Same—Renunciation—Rights of Action.**

Where the promisor of an executory contract announces to the promisee that he will not perform the conditions or pay the agreed consideration for the promisee's performance of his part thereunder assumed, and the renunciation is positive, distinct, and unequivocal, the promisee may regard the contract as breached and immediately bring suit for damages therefrom arising.

**3. Same—Trials—Evidence—Nonsuit.**

In an action for damages arising from defendants' alleged renunciation of their contract, whereunder the plaintiff was to cut their timber at a stipulated price, evidence is insufficient of an unequivocal renunciation which tends only to show that the defendants instructed the plaintiff to stop cutting the timber, which plaintiff refused to do, and was then told to shut down cutting for a few days, until they returned and let him know; that the plaintiff did so, and not hearing again from the defendants, began sawing for other parties. In this case it appears that plaintiff was operating at a loss and was indebted to the defendants at the time of the alleged breach.

**4. Contracts, Executory—Cutting Timber—Renunciation—Options—Evidence.**

An option given on defendants' lands whereon the plaintiff was cutting their timber under a contract with them is not of itself a renunciation by the defendants of their contract that will justify the plaintiff in stopping the performance of his obligation thereunder and sue for damages he claims to have sustained by reason of the alleged breach thereof by the defendants, unless it appears that the optionee has availed him of the privilege of purchase, has acquired the title, or in some way the plaintiff has been thereby prevented from performance of his part of the contract.

CIVIL ACTION, tried before *Whedbee, J.*, and a jury, at October Term, 1916, of BEAUFORT.

Plaintiff Riley W. Edwards brought an action in the Superior Court of Beaufort County against H. H. Proctor and L. Y. Holliday to recover damages for a breach of a contract by which they employed him to cut timber on their land, and they brought an action in Pitt County against him to recover a balance due on said contract to them by Edwards. The two cases were consolidated, and by agreement tried together in Beaufort County, and the following verdict rendered under the instructions of the court:

1. Did the plaintiffs and defendants enter into a contract for the cutting and manufacture of lumber, as alleged in the complaint in Edwards v. Proctor et al.? Answer: "Yes."

2. Did Proctor and Holliday wrongfully breach said contract, as alleged by Edwards? Answer: "No."

3. If so, what damage is Edwards entitled to recover? Answer: "None."

4. Did Edwards wrongfully breach said contract with Proctor and Holliday, as alleged? No answer.

5. If so, what damages are Proctor and Holliday entitled to recover on account of said breach? No answer.

6. In what amount, if any, is Edwards indebted to Proctor and Holliday for money advanced over and above the value of the lumber delivered and other offsets? Answer: "$278.50."

Plaintiff Edwards alleged that Proctor and Holliday had committed a breach of contract, by ordering him to stop operations at the mill, which entitled him to sue at once for his damages. The evidence of plaintiff was that Holliday told him "to saw the logs he had already cut and not to saw any more," to which Edwards replied that he would not stop, or could not stop, until Mr. Proctor told him to do so, and that he would have to come down, and then both tell him to stop the cutting of timber. Holliday said he would send Proctor, and Proctor did go to the mill and told Edwards "that he wanted him to shut down," to which Edwards replied "that he was not going to shut down until Proctor had paid him for the timber," and Proctor said, "Well, go on and cut the timber." When he walked off he remarked: "Shut down for a few days, and I will come back and let you know." He did not come back and tell Edwards what to do. Proctor and Holliday did not state why they wanted Edwards to stop the mill, but did say that they had given an option on the land.

William Smith, plaintiff's witness, testified that Holliday had told him that he had just gone to Riley Edwards to see if he would shut down the mill and stop cutting the timber, and that he thought Edwards would do so. He also stated that Riley Edwards had said to him that Holliday wanted him to stop, but that he had told Holliday he would not do it until Proctor said so. Edwards stopped the mill, except a few days, when he sawed for some other parties.

The court held that the evidence did not show such a breach by Proctor and Holliday as entitled plaintiff to sue, and instructed the jury accordingly, directing the answers to the issues, the amount of recovery, $278.50, being agreed upon by the parties. Plaintiff Edwards appealed.

*Harry McMullan for plaintiffs.*
*Ward & Grimes for defendant.*

WALKER, J., after stating the case: When parties enter into a contract for the performance of some act in the future, they impliedly promise that, in the meantime, neither will do anything to the harm or prejudice of the other inconsistent with the contractual relation they have assumed. The promisee, it also has been said (and this seems to to the better reason), has an inchoate right to the performance of the bargain, which becomes complete when the time for such performance has arrived, and, meanwhile, he has a right to have the contract kept open as a subsisting and effective one, as its unimpaired and unimpeached efficacy may be essential to his interests. Clark on Contracts (1904), p. 445, 447; *Frost v. Knight*, L. R. 7 Exch., 111. It has, therefore, been held (the Massachusetts court dissenting from this view in

*Daniels v. Newton,* 114 Mass., 530; 19 Am. Rep., 384) that if one party to the contract renounces it, the other may treat the renunciation as a breach and sue for his damages at once, provided the renunciation covers the entire performance to which the contract binds the promisor. 9 Cyc., 635, 636, and notes. The authorities do not seem to be fully agreed as to the precise ground upon which the principle should rest, although it is almost universally considered, and held, that it does exist. We need not stop to inquire as to the exact reason for the principle, but may well content ourselves with a general statement of it. A full discussion of it will be found in 9 Cyc., 635 *et seq.,* and notes to the text; 6 Ruling Case Law, sec. 385, and in the cases hereinafter cited. It is said in Ruling Case Law, *supra* (omitting immaterial matter): "When the promisee adopts the latter course, treating the contract as broken and himself as discharged from his obligations under it, he resolves his right into a mere cause of action for damages. His rights acquired under it may be dealt with in various ways for his benefit and advantage. Of all such advantages the repudiation of the contract by the other party, and the announcement that it will never be fulfilled, must of course deprive him. It is, therefore, quite right to hold that such an announcement amounts to a violation of the contract *in omnibus,* and that upon it the promisee, if so minded, may at once treat it as a breach of the entire contract and bring his action accordingly." In order to justify the adverse party in treating the renunciation as a breach, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute, although the renunciation need not necessarily be made at the place of performance named in the contract. It may be observed, however, that the renunciation itself does not *ipso facto* constitute a breach. It is not a breach of the contract unless it is treated as such by the adverse party. Upon such a repudiation of an executory agreement by one party, the other may make his choice between the two courses open to him, but can neither confuse them nor take both." We have not considered the measure of damages, as if there were a cause of action, for the reason that there was a nonsuit below, and it is, therefore, not relevant to the discussion. The law is well settled that the renunciation must be a positive, distinct, unequivocal. and absolute refusal to perform the contract in order to justify a suit at once for a breach and a recovery of damages therefor, 9 Cyc., at p. 637; *Smoot's case,* 82 U. S. (15 Wall.), 36, 48; *Hosmer v. Wilson,* 7 Mich., 294; *Vittum v. Estey,* 67 Vt., 158; *Zuck v. McClure,* 98 Pa. St., 541. It is said in *Vittum v. Estey, supra:* "As to a breach by renunciation, it is settled law in England and many jurisdictions here that when one party to a bilateral contract, before the time of performance on

his part has arrived, repudiates the entire contract, or a part of it that goes to the whole consideration, and declares that he will no longer be bound by it, the other party may, if he pleases, act upon the declaration and treat the contract as thereby broken and at an end for all purposes except for bringing a suit upon it, which he may bring at once without waiting for the time of performance. Or, to put it as *Lord Blackburn* does in *Mersey Steel and Iron Co. v. Naylon, Bensir & Co.,* 9 Appeal Cases, 434, 442, the other party may say: 'You have given me distinct notice that you will not perform the contract. I will not wait till you have broken it, but will treat you as having put an end to it, and if necessary will sue you for damages; but, at all events, I will not go on with the contract.' But declarations that do not amount to an absolute and unequivocal refusal to perform the contract cannot be treated as a renunciation of it," citing *Dingley v. Oler, supra,* and *Johnston v. Milling,* L. R. 16 Q. B. D., 460. If we examine the proof in this case, no positive and absolute renunciation appears which gave the plaintiff a right to sue upon the contract for damages, as for a present breach of it. Holliday, it is true, had ordered the plaintiff Edwards to stop the mill after he had sawed the logs on hand or already cut. If the evidence had stopped here, the case might have been quite different from what we hold it is. But that is not all of it. Edwards refused positively to obey the order, or to consider it as a renunciation of the contract and a breach thereof. He insisted that the order must come from both of the parties, Holliday and Proctor, and that the former should send Proctor to see him, which was assented to and done. When Proctor came, he also told Edwards "to shut down," but this Edwards declined to do until he was paid for what he had already done. Proctor then told him "to go on and cut the timber," and then added, as he walked away: "Shut down for a few days, and I will come back and let you know." This left the matter open for an agreement as to what should be done, a few days being allowed for reflection; but never afterwards was there any positive, unequivocal, or unqualified order to quit. If Edwards wanted the matter settled by a distinct understanding as to what he should do, "go on or stop," it was easy for him to have inquired of the defendants and got an answer about which there could be no doubt or uncertainty. Instead of pursuing this course, being, as suggested, "behind with the defendants," he preferred to end the contract and sue for damages upon the theory that there had been a breach. He acted prematurely and inconsiderately in supposing that the time had arrived for him to proceed by suit to vindicate his supposed rights. The declarations of Proctor were not stronger or more unequivocal than those of defendant in *Dingley v. Oler,* 117 U. S., 490, a case much cited on this question, and where the language was: "We cannot, therefore, comply with your request to deliver to you the ice claimed, and respect-

fully submit that you ought not to ask this of us in view of the fact stated herein." This was written in reply to a peremptory demand from plaintiff for a delivery of ice immediately, under a contract for the same. The defendant had promised to deliver later, if the price changed, and expresssed the hope that a more favorable view would be taken, upon reflection. The Court said as to these facts: "This, we think, is very far from being a positive, unconditional, and unequivocal declaration of fixed purpose not to· perform the contract in any event or at any time. In view of the consequences sought to be deduced and claimed as a matter of law to follow, the defendants have a right to insist that their expressions, sought to be converted into a renunciation of the contract, shall not be enlarged by constructions beyond their strict meaning." The Court also said that the implied request by the defendant in that case for further consideration, based upon the peremptory demand by the defendant, left the matter open. And so we think in this case, that when Proctor had said, "You may go on and cut," or used words to that effect, and there was no further order to shut down permanently, there was no such positive, absolute and unequivocal renunciation of the contract and refusal to be further bound by it as constituted a breach entitling plaintiff Edwards to sue for his damages at once, and the matter was at that time left open for future agreement. The giving of an option for the sale of the lands to another which, so far as appears, was not accepted, and never passed any title to the land, did not constitute such a breach upon the facts of this case. It seems to be conceded that a sale under it was never consummated. There is, at least, no evidence that it was. There may be, first, a sale of lands; second, an agreement to sell land; and, third, what is popularly called an option. The first is the actual transfer of title from grantor to gantee by appropriate instrument of conveyance. The second is a contract to be performed in the future, and, if fulfilled, results in a sale. It is a preliminary to a sale, and is· not the sale. Breaches, rescission, or release may occur, by which the contemplated sale never takes place. The third, an option, originally is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not agree to sell it. He only transfers the right, or privilege, to buy at the election of the other party. The second party gets no land *in praesenti,* nor an agreement that he shall have land, but merely the right to call for and receive land if he elects to do so. An option is unilateral, depending upon the will or choice of one of the parties for its conversion into a sale or even an agreement to sell. *Winders v. Kenan,* 161 N. C., 628. The cases

relied on by plaintiff do not apply. The decisions in them were based upon different facts.

The plaintiff might have enjoyed the full benefit of his contract if he had not stopped cutting the timber when he did. He had been overpaid for what he had done, and he risked nothing in suspending a few days. The jury found, without any serious contest between the parties as to the amount, that defendant owed a balance of $278.50. The case shows that he had been advanced the sum of $974.50, and from this was deducted "$600 for the contract price of cutting 100,000 feet of timber; $25 for building a house on premises; $51 for cutting out a right of way, and $20 for piling timber, leaving balance of $278.50," the amount allowed by the jury under the instructions of the court. It seems, therefore, that plaintiff was engaged in a losing business, but if there was a prospect of its being profitable, he should not have thrown up the contract, but gone on with it to the end and reaped the profit. So far as we can see from the facts as they now appear, he would not have been interrupted in his work.

We think the case was correctly submitted to the jury.

No error.