PROFILE INVESTMENTS NO. 25, LLC, Plaintiff v.
AMMONS EAST CORPORATION, Defendant

No. COA09-1471

(Filed 21 September 2010)

**1. Judges— one judge overruling another—no change of circumstances**

An order granting defendant's third motion for summary judgment was vacated where there was no indication that the trial court made the change of circumstances determination necessary for one superior court judge to overrule another.

**2. Contracts— breach—repudiation**

The trial court erred by denying summary judgment for defendant on a repudiation of contract claim arising from a real estate transaction where plaintiff made clear that it intended to close in accordance with the contract and did not treat defendant Ammons' letter as a repudiation until Ammons tendered the deed.

Appeal by plaintiff from order entered 6 February 2008 by Judge Ripley E. Rand and 11 March 2009 by Judge Paul C. Ridgeway in Superior Court, Wake County and by defendant from order entered 6 February 2008 by Judge Ripley E. Rand and 21 July 2008 by Judge James C. Spencer, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 14 April 2010.

*Parker Poe Adams & Bernstein LLP, by Charles E. Raynal, forProfile Investments No. 25, LLC.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. by Scott A. Miskimon, J. Mitchell Armbruster, and Caroline N. Belk, for Ammons East Corporation.*

STROUD, Judge.

The trial court granted summary judgment in favor of Ammons East Corporation pursuant to Ammons East Corporation's third motion for summary judgment. Both parties appeal various orders, and for the following reasons we (1) reverse the 6 February 2008 order of the trial court and remand for an entry of summary judgment in favor of Ammons East Corporation and (2) vacate the 11 March 2009 order of the trial court.

PROFILE INVS. NO. 25, LLC v. AMMONS EAST CORP.

[207 N.C. App. 232 (2010)]

## I. Background

On or about 28 June 2007, plaintiff Profile Investments No. 25, LLC ("Profile") filed a complaint against defendant Ammons East Corporation ("Ammons"). Profile sued for breach of contract by repudiation and requested specific performance and monetary damages. On or about 16 August 2007, Profile filed a motion for summary judgment. On 31 August 2007, Profile filed an amended complaint which stated essentially the same claim for breach of contract by repudiation as the original complaint, but the amended complaint did not seek specific performance. The amended complaint made the following allegations relevant to the breach of contract claim:

5. On or about June 13, 2005, Profile and Ammons East entered into that certain Real Estate Purchase And Sale Contract (the "Contract"), whereby Profile agreed to purchase and Ammons East agreed to sell certain real property located in Wake County, North Carolina (the "Property").

. . . .

11. Pursuant to the Contract, as amended, Profile had until July 31, 2007 to close the subject transaction.

12. On or about May 24, 2007, prior to the Contingency Satisfaction Date, Ammons East's President, Justus M. (Jud) Ammons, sent a typed letter to Profile's local real estate agent, insisting that Profile had to close on or before June 1, 2007 or else Ammons East would consider the Contract null and void. Mr. Ammons reiterated Ammons East's position in a May 31, 2007 hand-written note at the bottom of his May 24, 2007 typed letter. . . .

13. Thereafter, in or about the first two weeks of June, 2007 in a telephone call with Profile's local real estate agent, Mr. Ammons once again reiterated Ammons East's position that the Contract was null and void and further stated that Ammons East would not sell the property to Profile unless Profile paid Ammons East a non-refundable deposit of approximately $635,000, even though such a deposit was not required under the Contract.

14. Thereafter, in or about the first two weeks of June, 2007 in a telephone call with Profile's member, Frank Csapo, Mr. Ammons once again reiterated Ammons East's position that the Contract was null and void and further stated that Ammons East would not sell the property to Profile unless Profile paid Ammons

PROFILE INVS. NO. 25, LLC v. AMMONS EAST CORP.

[207 N.C. App. 232 (2010)]

East a non-refundable deposit of approximately $320,000, even though such a deposit was not required under the Contract.

15. Mr. Csapo made clear in his telephone call with Mr. Ammons that Profile remained ready, willing, and able to close pursuant to the terms of the Contract.

16. Nonetheless, in or about the first two weeks of June, 2007, Ammons East entered into another real estate purchase and sale contract with regard to the Property with another party unrelated to Profile.

In the prayer for relief, Profile requested only an award of monetary damages.

On or about 2 November 2007, Ammons filed an answer to Profile's amended complaint, including counterclaims against Profile. On 27 November 2007, Ammons filed a motion for summary judgment. On or about 3 January 2008, Profile replied to Ammons's counterclaims. On 6 February 2008, the trial court denied both Profile's and Ammons's motions for summary judgment. On 21 May 2008, Ammons filed a second motion for summary judgment. On 21 July 2008, the trial court denied Ammons's second motion for summary judgment. On 26 November 2008, Ammons filed a third motion for summary judgment. On or about 11 March 2009, the trial court granted defendant's third motion for summary judgment and thus dismissed Profile's claim for breach of contract.

On 12 May 2009, Ammons voluntarily dismissed its counterclaims without prejudice. Both parties appeal.

II. Profile's Appeal

In its notice of appeal Profile appeals from the 6 February 2008 order of Judge Rand denying summary judgment as to both parties and the 11 March 2009 order of Judge Ridgeway granting summary judgment in favor of Ammons.

A. 11 March 2009 Order

[1] The 11 March 2009 order of Judge Ridgeway was based upon Ammons' third motion for summary judgment; both of Ammons's previous two summary judgment motions had been denied. Judge Ridgeway's order regarding Ammons's third motion for summary judgment raises a jurisdictional issue which this Court must address *sua sponte. Crook v. KRC Management Corp.*, —— N.C. App. ——, ——, —— S.E.2d ——, ——

(Aug. 3, 2010) (No. COA09-936) ("If one trial judge enters an order that unlawfully overrules an order entered by another trial judge, such an order must be vacated, including any award of fines or costs. Since the issue in question relates to jurisdiction, and jurisdictional issues can be raised at any time, even for the first time on appeal and even by a court-*sua sponte*[.]" (citations and quotation marks omitted)).

> One superior court judge may only modify, overrule, or change the order of another superior court judge where the original order was (1) interlocutory, (2) discretionary, and (3) there has been a substantial change of circumstances since the entry of the prior order. A substantial change in circumstances exists if since the entry of the prior order, there has been an intervention of new facts which bear upon the propriety of the previous order. The burden of showing the change in circumstances is on the party seeking a modification or reversal of an order previously entered by another judge.

*Id.* at ——, —— S.E.2d at —— (citation and quotation marks omitted). Furthermore, "the determination of whether an adequate change in circumstances has occurred must be made by the trial court, not the parties." *Id.* at ——, ——. S.E.2d at —— (citation omitted).

In *Crook*, the defendant appealed from a trial court order ruling on a motion to compel *after* a previous motion to compel had already been decided. *Id.* at ——, —— S.E.2d at ——. This Court vacated and remanded the second order ruling on the motion to compel because

> [t]he record simply contain[ed] no indication that the trial court made the required change of circumstances determination . . . . Secondly, in the absence of adequate findings specifying the nature of the change of circumstances upon which the court relie[d], it [wa]s without authority to overrule, either expressly or implicitly, the first judge's prior determination as reflected in its order.

*Id.* at ——, S.E.2d at —— (citation, quotation marks, and brackets omitted).

Here, as in Crook, "[t]he record simply contains no indication that the trial court made the required change of circumstances determination[.]" *Id.* at ——, —— S.E.2d at —— (quotations marks omitted). Accordingly, we vacate the 11 March 2009 order granting summary judgment in favor of Ammons. *See id.*, —— N.C. App. ——, —— S.E.2d ——. As we are vacating the 11 March 2009 order, we need not address plaintiff's first two arguments on appeal.

B. 6 February 2008 Order

**[2]** Profile also appeals from Judge Rand's 6 February 2008 order denying both Profile's and Ammons's summary judgment motions. Profile argues the trial court erred in its 6 February 2008 order because "Ammons is liable for breach of contract as a matter of law[.]" (Original in all caps.) Profile contends that the evidence establishes that "Ammons [r]epudiated the [a]greement[;]" "Profile [t]reated Ammons' [r]epudiation as a [b]reach[;]" and "Profile [w]as [r]eady, [w]illing and [a]ble . . . to [p]erform at the [t]ime of the [r]epudiation[.]"

In reviewing the trial court's decision to grant a motion for summary judgment,

> the standard of review is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate when viewed in the light most favorable to the non-movant, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

*S.B. Simmons Landscaping & Excavating, Inc. v. Boggs*, 192 N.C. App. 155, 163-64, 665 S.E.2d 147, 152 (2008) (citations and quotation marks omitted).

The primary substantive issue presented by the pleadings in this case is whether Ammons breached its contract with Profile by repudiation.

> Breach may . . . occur by repudiation. Repudiation is a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties. When a party repudiates his obligations under the contract before the time for performance under the terms of the contract, the issue of anticipatory breach or breach by anticipatory repudiation arises. One effect of the anticipatory breach is to discharge the non-repudiating party from his remaining duties to render performance under the contract.

> When a party to a contract gives notice that he will not honor the contract, the other party to the contract is no longer required to make a tender or otherwise to perform under the contract because of the anticipatory breach of the first party.

*Millis Constr. Co. v. Fairfield Sapphire Valley*, 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987) (citations and brackets omitted).

For repudiation to result in a breach of contract, "the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute[.]" *Edwards v. Proctor*, 173 N.C. 41, 44, 91 S.E. 584, 585 (1917) (citation and quotation marks omitted). Furthermore, even a "distinct, unequivocal, and absolute" "refusal to perform" is not a breach "unless it is treated as such by the adverse party." *Id.* (citation and quotation marks omitted). Upon repudiation, the non-repudiating party "may at once treat it as a breach of the entire contract and bring his action accordingly." *Id.* (citation and quotation marks omitted). Thus, breach by repudiation depends not only upon the statements and actions of the allegedly repudiating party but also upon the response of the non-repudiating party. *See id.* ("When the promisee adopts the latter course, treating the contract as broken and himself as discharged from his obligations under it, he resolves his right into a mere cause of action for damages. His rights acquired under it may be dealt with in various ways for his benefit and advantage. Of all such advantages the repudiation of the contract by the other party, and the announcement that it will never be fulfilled, must of course deprive him. It is, therefore, quite right to hold that such an announcement amounts to a violation of the contract in omnibus, and that upon it the promisee, if so minded, may at once treat it as a breach of the entire contract and bring his action accordingly. In order to justify the adverse party in treating the renunciation as a breach, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute, although the renunciation need not necessarily be made at the place of performance named in the contract. It may be observed, however, that the renunciation itself does not *ipso facto* constitute a breach. It is not a breach of the contract unless it is treated as such by the adverse party. Upon such a repudiation of an executory agreement by one party, the other may make his choice between the two courses open to him, but can neither confuse them nor take both." (citation and quotation marks omitted)).

In *Edwards*, our Supreme Court examined the effect of an alleged statement of repudiation and the response of the non-repudiating party to the contract. *Id.*, 173 N.C. 41, 91 S.E. 584. The *Edwards* plaintiff sued the defendants, Proctor and Holliday, for breach of a contract under which plaintiff was employed to cut timber on the defendants' land and operate a sawmill to cut the wood into lumber; the defendants

also sued plaintiff to recover a balance due on the same contract. *Id.* at 42-43, 91 S.E. at 584. The two cases were consolidated and tried together. *Id.* at 42, 91 S.E.2d at 584.

> Plaintiff Edwards alleged that Proctor and Holliday had committed a breach of contract, by ordering him to stop operations at the mill, which entitled him to sue at once for his damages. The evidence of plaintiff was that Holliday told him "to saw the logs he had already cut, and not to saw any more," to which Edwards replied that he would not stop, or could not stop, until Mr. Proctor told him to do so, and that he would have to come down, and then both tell him to stop the cutting of timber. Holliday said he would send Proctor, and Proctor did go to the mill and told Edwards "that he wanted him to shut down," to which Edwards replied "that he was not going to shut down until Proctor had paid him for the timber," and Proctor said, "Well, go on and cut the timber." When he walked off he remarked: "Shut down for a few days, and I will come back and let you know." He did not come back and tell Edwards what to do. Proctor and Holliday did not state why they wanted Edwards to stop the mill, but did say that they had given an option on the land.

*Id.* at 43, 91 S.E. at 584. The jury determined that defendants Holliday and Proctor had not breached the contract and awarded nothing to plaintiff Edwards. *Id.* at 42, 91 S.E. at 584. Our Supreme Court determined there was no error in the trial because

> [i]f we examine the proof in this case, no positive and absolute renunciation appears which gave the plaintiff a right to sue upon the contract for damages, as for a present breach of it. Holliday, it is true, had ordered the plaintiff Edwards to stop the mill after he had sawed the logs on hand or already cut. If the evidence had stopped here, the case might have been quite different from what we hold it is. But that is not all of it. *Edwards refused positively to obey the order, or to consider it as a renunciation of the contract and a breach thereof.* He insisted that the order must come from both of the parties, Holliday and Proctor, and that the former should send Proctor to see him, which was assented to and done. When Proctor came, he also told Edwards "to shut down," but this Edwards declined to do until he was paid for what he had already done. Proctor then told him "to go on and cut the timber," and then added, as he walked away: "Shut down for a few days, and I will come back and let you know." This left the matter open

for an agreement as to what should be done, a few days being allowed for reflection; but never afterwards was there any positive, unequivocal, or unqualified order to quit. If Edwards wanted the matter settled by a distinct understanding as to what he should do, "go on or stop," it was easy for him to have inquired of the defendants and got an answer about which there could be no doubt or uncertainty. Instead of pursuing this course, being, as suggested, "behind with the defendants," *he preferred to end the contract and sue for damages upon the theory that there had been a breach. He acted prematurely and inconsiderately in supposing that the time had arrived for him to proceed by suit to vindicate his supposed rights.*

*Id.* at 45, 91 S.E. at 585 (emphasis added).

We first note that there is no dispute as to the facts surrounding Ammons's alleged repudiation or Profile's response; the question is one of law as to whether the facts, viewed in the light most favorable to Profile, *see S.B. Simmons Landscaping & Excavating, Inc.* at 164, 665 S.E.2d at 152, support the claim of repudiation. Both parties admit that after execution of the original contract to purchase the property, they entered into three amendments to the original contract which extended the closing date, the last of which provided that the closing of the sale would occur on or by 31 July 2007. On or about 24 May 2007, Justus M. Ammons, president of Ammons, wrote a letter to Profile which provided in pertinent part:

As you are the agent for Profile Investments #25, LLC which has a contract on the above property with the first one dated 13 June 2005 and three subsequent amendments, last dated October 31, 2006, I want to notify you that the last calls for Closing on June 1, 2007. As you know I have called and talked with you on more than one occasion over the past several months.

I called Mr. Linderman to say that you had had plenty of time to Close. I have tried unsuccessfully to get a definite closing date, and I keep getting answers about yes you want to close, but no date has been set. I have been messing with you for more than two years.

I can't imagine anyone who cannot get their business straight in two years. Therefore, unless you make some other arrangements with me immediately I will consider this Contract null and void on June 1, 2007.

On or about 31 May 2007, Mr. Ammons faxed the above letter to Profile with a handwritten note which read, "I will be out of town tomorrow[.] Back Mon[.] 4th—[w]hen I will definitely [c]onsider org[.] contract with you no longer exist." Profile notes that Mr. Ammons demanded Profile "close the deal by June 1, 2007—60 days before the closing deadline." Ammons contends that Mr. Ammons "misread . . . [the Third Amendment to the Agreement and] he honestly believed that Appellant's deadline to close was June 1, 2007."

On or about 12 June 2007, Ammons entered into another contract to sell the property at issue to Carolina CMC, LLC; however on or about 14 June 2007, two days later, Mr. Ammons wrote to Mr. Ross Coppage with Carolina CMC, LLC stating in pertinent part,

> This is to request that you provide written termination of our existing contract on the shopping center property in East Park dated June 12, 2007. As you know, I called you this morning to discuss with you the fact that the original contract I had for several years on this property I thought had expired and in good faith, told you it had expired and I was mistaken.

On or about 18 June 2007, Ms. Elizabeth Voltz, Profile's attorney, sent a letter to Mr. Ammons which stated that "the Buyer is moving forward towards closing on or before July 31, 2007. The Buyer is ready, willing and able to proceed to Closing pursuant to the terms of the Contract." Ms. Voltz's letter then reiterated twice more with underlining that "the Buyer is <u>ready, willing and able</u> to close the transaction . . . on or before July 31, 2007." (Emphasis in original.) Also on or about 18 June 2007, Ms. Voltz sent an email to Frank A. Csapo, Profile's manager, informing him that

> Jud [Ammons] was 'confused by the dates in the contract' and was going to immediately get in touch with the other buyer and let them know of the existence of your contract. Jim said that Jud was writing a letter to confirm that your contract was still in effect and that he would meet his obligations under your contract.

Ms. Voltz went on to state that "our main concern was that Jud [Ammons] did not sell the property to another buyer[.]"

On or about 28 June 2007, Profile filed suit against Ammons for breach of contract by repudiation, requesting specific performance and monetary damages. On or about 3 July 2007, Ammons and Carolina CMC, LLC terminated their agreement. On 5 July 2007, Ms. Voltz contacted Mr. Scott Miskimon, Ammons's attorney, stating she

**PROFILE INVS. NO. 25, LLC v. AMMONS EAST CORP.**

[207 N.C. App. 232 (2010)]

was "glad to hear that Mr. Ammons has decided to proceed to closing" and to "[l]et [her] touch base with . . . [her] client and get back with you relative to a closing date." Ms. Voltz then requested various seller documents. On 6 July 2007, Mr. Miskimon responded to Ms. Voltz and requested a specific closing date. On or about 31 July 2007, Ammons tendered the fully executed deed to the subject property to Ms. Voltz; however, Profile did not accept the deed. On 31 August 2007, Profile filed an amended complaint, which included the claim for breach of contract by repudiation, but this time dropping the request for specific performance and only requesting monetary damages.

We need not address whether Mr. Ammons's letter setting closing on or by 1 June 2007 was a mistake or whether the content of Mr. Ammons's letter, even with the erroneous date, could be considered as a repudiation, as the undisputed statements and actions of Profile make it clear that Profile did not treat the letter as a repudiation. Thus, even assuming *arguendo*, that Mr. Ammons's letter was a "refusal to perform . . . the whole contract or of a covenant going to the whole consideration, and [was] . . . distinct, unequivocal, and absolute . . . . [i]t is not a breach of the contract unless it is treated as such by the adverse party." *Edwards* at 44, 91 S.E. at 585.

Here, after receipt of the letter "repudiating" the contract, Profile sent a letter to Mr. Ammons demanding that Ammons proceed with the contract or be sued. Within Profile's letter, it emphasized on three separate occasions that it was "ready, willing and able to close . . . on or before July 31, 2007." Profile even filed the original compliant seeking specific performance of the contract and continued to inform Ammons that it intended to close in accordance with the contract and requested seller documents from Ammons. Profile's actions and statements clearly demonstrated that Profile was planning on proceeding with the contract and Profile did nothing to treat Mr. Ammons's letter as a repudiation until Ammons tendered the deed. Only upon tender of the deed did Profile change its course, and after refusing to accept the deed it had demanded, dropped its claim for specific performance. As Profile did not treat Mr. Ammons's letter as a repudiation, the contract was never breached. *See Edwards*, 173 N.C. 41, 91 S.E. 584. Accordingly, we reverse the 6 February 2008 order of the trial court denying summary judgment in favor of Ammons.

### III. Defendant's Appeal

Ammons concedes in its brief "[i]f Appellant Profile's appeal is unsuccessful, the Court may dismiss this cross-appeal as moot." Therefore, we need not address defendant's appeal.

IV. Conclusion

For the foregoing reasons we reverse the 6 February 2008 order of the trial court and remand for entry of an order granting summary judgment in favor of Ammons and vacate the 11 March 2009 order of the trial court.

REVERSED and REMANDED in part; VACATED in part.

Judges McGEE and HUNTER, JR., Robert N., concur.