D.G. II, LLC, Plaintiff v. CLIFFORD E. NIX and JOHNSON BOAT WORKS, Defendants

No. COA10-882

(Filed 19 April 2011).

## 1. Contracts— construction of boat—delayed completion

The trial court did not err by granting plaintiff's motion for partial summary judgment and by denying defendants' motion for summary judgment on a breach of contract claim involving the construction of a 57-foot sport fishing boat that was finished late and sold to another buyer. Contrary to defendants' allegation, plaintiff did not declare defendants in default after being notified that completion would be delayed, and did not insist on closing on the specified date.

## 2. Uniform Commercial Code— breached contract—recovery of deposit

Plaintiff was entitled under the U.C.C. to recover the amount of the purchase price it had already paid (plus interest) for the construction of a sport fishing boat that was not finished on time and was ultimately sold to someone else.

Appeal by defendants from orders entered 2 October and 30 November 2009 by Judge Alma L. Hinton in Dare County Superior Court. Heard in the Court of Appeals 12 January 2011.

*Vandeventer Black LLP, by Robert L. O'Donnell and Norman W. Shearin, for plaintiff-appellee.*

*C. Everett Thompson, II, for defendant-appellants.*

CALABRIA, Judge.

Clifford E. Nix ("Nix") and Johnson Boat Works ("JBW") (collectively, "defendants") appeal the trial court's 2 October 2009 order granting D.G. II, LLC's ("plaintiff"), motion for partial summary judgment on the issue of breach of contract and the 30 November 2009 order granting plaintiff's motion for summary judgment on the issue of damages. We affirm.

## I. BACKGROUND

On 11 May 2006, John Floyd ("Floyd"), on plaintiff's behalf, entered into a contract ("the contract") with defendants for the con-

**D.G. II, LLC v. NIX**

[211 N.C. App. 332 (2011)]

struction of a 57-foot sport fishing boat ("the boat") to be used in a charter-for-hire fishing business. Under the terms of the contract, plaintiff was required to pay a deposit in the amount of $100,000.00 to defendants, and to pay the balance of the purchase price of $1,250,000.00 within five days of receipt of notice from defendants that the boat was completed. Furthermore, defendants agreed to build and deliver the boat in accordance with the specifications stated in the contract. The contract required defendants to transfer the boat's title and deliver possession of the boat to plaintiff on or before 31 July 2006. On 11 May 2006, plaintiff deposited $100,000.00 with defendants.

Prior to 12 July 2006, defendants informed Floyd that the boat would not be completed until 7 September 2006 rather than 31 July 2006, "due primarily to the diversion of subcontractors to other boats under construction by other companies." As compensation for the delay, defendants proposed to include a "teak deck," worth approximately $5,000.00, at no additional cost to plaintiff. Defendants also offered plaintiff the option to terminate the contract and refund its deposit in full. Plaintiff declined to terminate the contract and elected to proceed.

On 14 July 2006, plaintiff delivered a letter to defendants explaining the reasons that defendants' delay for completion of the boat until September 7, 2006, was "unacceptable" and "disastrous." Plaintiff made "extensive plans to launch its charter business late in the 2006 season" since the "fishing season will be drawing to an end in the late summer or early fall of this year . . . ." Plaintiff also stated that the delay in delivery would prevent its participation "in the Pirate's Cove Tournament in mid-August . . ." and that "[i]t is hard to overstate the importance of participating in this tournament to [plaintiff's] business." Plaintiff reminded defendants that participation in the tournament was discussed at the time the parties signed the contract.

Plaintiff also proposed a counteroffer in the 14 July 2006 letter to defendants and offered defendants one of three options: (1) defendants would pay plaintiff consequential damages of $100,750.00 and deliver the boat "at a mutually agreeable time" at the price and conditions provided for in the contract; (2) plaintiff would provide an irrevocable letter of credit for the balance of the purchase price owed on the boat on or before 2 August 2006, defendants would exercise the letter of credit when plaintiff took possession of the boat in April 2007, the boat would meet certain additional inspection and certification requirements, and defendants would pay plaintiff the captain's

D.G. II, LLC v. NIX

[211 N.C. App. 332 (2011)]

salary of more than $4,000.00 per month plus employment expenses until 31 March 2007 or delivery of the boat; or (3) plaintiff would take delivery of the boat during the first week of October 2006 for the purchase price in the contract, along with eight additional specifications to be added to the boat, and payment of two months' captain's salary and expenses.

Prior to receiving a response to the 14 July 2006 letter, plaintiff notified defendants on 31 July 2006 that it was "ready, willing and able" to perform under the contract. However, defendants did not deliver the boat to plaintiff on 31 July 2006, or at any other time. On 3 August 2006, Floyd informed defendants again that plaintiff desired to have the boat.

On 9 August 2006, defendants informed plaintiff that Floyd "made direct threats toward [defendants] concerning litigation that he intends to file and the damages . . . he plans to seek. In other words, [defendants] believe that Mr. Floyd intends to file suit regardless of any proposal for completion of the boat." On 10 August 2006, defendants informed plaintiff, in writing, that defendants "will be terminating the contract based on [plaintiff's] anticipatory breach . . . ." On 11 August 2006, plaintiff sent a letter to defendants stating that the boat "must be completed and delivered no later than October 13, 2006" and proposed another counteroffer. Defendants did not respond to the proposal.

On 18 August 2006, defendants informed plaintiff that it was their "understanding" that plaintiff would not be purchasing the boat. Defendants mailed a draft of an agreement which would "terminate[] the relationship" between the parties, and offered to refund the deposit if plaintiff released all claims it may have had against defendants under the contract. Also on 18 August 2006, defendants signed a contract to sell the boat to another buyer named Christopher Schultz ("Schultz") for $1,475,000.00. The sale price to Schultz was $125,000.00 more than the price of the boat in the contract between defendants and plaintiff.

On 6 September 2006, plaintiff filed a complaint against defendants in Dare County Superior Court, seeking, *inter alia,* specific performance of the contract, damages in an amount in excess of $10,000.00, and a restraining order prohibiting defendants from "selling, assigning, or in any way encumbering, damaging or misusing" the boat. Plaintiff also filed an amended complaint, adding Schultz and the broker for the sale, MacGregor Yachts, Inc. ("MacGregor"), as

**D.G. II, LLC v. NIX**

[211 N.C. App. 332 (2011)]

defendants, and sought, *inter alia*, specific performance and damages for lost profits and income as a result of its inability to proceed with its business plan for the operation of a commercial sport fishing enterprise during the period of 1 August 2006 until 18 October 2006. Approximately one month later, Schultz requested that defendants return his deposit for the boat. Later, defendants entered into a second contract with Schultz to sell him the boat for $1,400,000.00, which was $50,000.00 more than the amount in the contract between plaintiff and defendants. Subsequently, the trial court granted Schultz's and MacGregor's motion to dismiss.

On 21 December 2006, plaintiff informed defendants that it desired to purchase the boat under the contract and "would drop all charges against [defendants]." Defendants answered and asserted counterclaims for, *inter alia*, breach of contract. On 28 March 2007, plaintiff again expressed interest in purchasing the boat and "resolving outstanding matters regarding various claims at a later date." Plaintiff deposited the amount of $1,250,000.00 in its attorney's trust account and was prepared to close immediately and take possession of the boat. On 2 July 2007, plaintiff requested that defendants return its $100,000.00 deposit, but defendants did not respond.

On 1 September 2009, defendants moved for summary judgment, contending that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. On 4 September 2009, plaintiff moved for partial summary judgment "on the breach of contract cause of action" and, in the prayer for relief, asked the court to "hold open for further adjudication the remaining causes of action and damages." In the 2 October 2009 order ("the October 2009 order"), the trial court granted plaintiff's motion for partial summary judgment on its breach of contract claim. The trial court also held open for further adjudication the issue of damages on plaintiff's breach of contract claim.

On 30 November 2009, the trial court entered an order ("the November 2009 order") awarding plaintiff damages against defendants, jointly and severally, in the amount of $100,000.00, representing plaintiff's deposit toward the purchase price of the boat, together with interest at the rate of eight percent from 10 August 2006 until paid. The trial court denied plaintiff's motion for summary judgment regarding other damages. On 27 April 2010, the jury returned a verdict finding that plaintiff was not entitled to any additional damages from defendants. Defendants appeal the October 2009 partial summary judgment and the November 2009 summary judgment.

**D.G. II, LLC v. NIX**

[211 N.C. App. 332 (2011)]

## II. SUMMARY JUDGMENT

Defendants argue that the trial court erred by granting plaintiff's motion for partial summary judgment because "disputed issues of material fact . . . precluded summary judgment in favor of plaintiff" and by denying their motion for summary judgment on the breach of contract claim. We disagree.

### A. Standard of Review

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *One Beacon Ins. Co. v. United Mech. Corp.*, —— N.C. App. ——, ——, 700 S.E.2d 121, 122 (2010) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "We review a trial court's order granting or denying summary judgment *de novo*. 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### B. Initial Matters

As an initial matter, we note that defendants do not object to any of the trial court's findings of fact in its order denying their motion for summary judgment on the breach of contract claim.

> The purpose of summary judgment is to eliminate formal trial when the only questions involved are questions of law. Thus, although the enumeration of findings of fact and conclusions of law is technically unnecessary and generally inadvisable in summary judgment cases, [], summary judgment, by definition, is always based on two underlying questions of law: (1) whether there is a genuine issue of material fact and (2) whether the moving party is entitled to judgment, []. On appeal, review of summary judgment is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones.

*Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987) (internal citations omitted). Since defendants did not conteste the trial court's

**D.G. II, LLC v. NIX**

[211 N.C. App. 332 (2011)]

summary of the undisputed facts in the order granting summary judgment, defendants "cannot raise this issue on appeal." *Elec-Trol, Inc. v. Contractors, Inc.*, 54 N.C. App. 626, 630, 284 S.E.2d 119, 121 (1981). Therefore, our review is "limited to whether the trial court's conclusions as to [its] questions of law were correct ones." *Ellis*, 319 N.C. at 415, 355 S.E.2d at 481.

## C. Breach of Contract

" 'The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.' " *Ahmadi v. Triangle Rent a Car, Inc.*, —— N.C. App. ——, ——, 691 S.E.2d 101, 103 (2010) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)).

In the instant case, the parties do not dispute that a valid contract existed between them. Therefore, the only issue is whether there was a breach of contract, and if so, which party breached the contract.

## 1. Plaintiff's Motion for Partial Summary Judgment

[1] Defendants argue that disputed issues of material fact precluded summary judgment in favor of plaintiff. More specifically, defendants argue that there was a genuine issue of material fact regarding: (1) whether plaintiff allowed defendants a reasonable time to perform after plaintiff declared defendants in default, and (2) whether plaintiff, by not allowing defendants a reasonable time to perform and insisting upon defendants paying plaintiff damages, committed a material breach of the contract. We disagree.

Defendants contend that the "most obvious" issue of material fact that precludes partial summary judgment in favor of plaintiff is whether plaintiff allowed defendants "a reasonable time to deliver the vessel before declaring them in default[.]"

Defendants' allegations that plaintiff "declar[ed] them in default" are mistaken. The record shows that plaintiff never alleged defendants were in default. Plaintiff filed the complaint for specific performance and damages for breach of contract. The contract provided that the boat would be delivered by 31 July 2006. On 12 July 2006, defendants notified plaintiff that the boat would not be delivered until 7 September 2006. Two days later, plaintiff proposed a counteroffer. On 31 July 2006, plaintiff notified defendants that it was ready, willing, and able to perform under the contract, and was willing to take delivery of the boat after that date in accordance with the terms of the contract.

On 10 August 2006, defendants notified plaintiff that they would be terminating the contract and on 18 August 2006, defendants signed a contract to sell the boat to a third party. In December 2006 and March 2007, plaintiff notified defendants that it was still ready, willing, and able to proceed under the contract. These facts show that plaintiff did not declare defendants were in default. Therefore, there are no genuine issues of material fact regarding defendants' default or whether defendants had a reasonable time to perform the contract.

### 2. Defendants' Motion for Summary Judgment

Defendants argue that the trial court erred in denying their motion for summary judgment on their breach of contract claim because "the undisputed facts reveal that, as a matter of law, plaintiff breached the agreement." We disagree.

### a. Anticipatory Repudiation

Defendants contend that plaintiff breached the contract by anticipatory repudiation. We disagree.

> "Breach may . . . occur by repudiation. Repudiation is a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties. When a party repudiates his obligations under the contract before the time for performance under the terms of the contract, the issue of anticipatory breach or breach by anticipatory repudiation arises. One effect of the anticipatory breach is to discharge the non-repudiating party from his remaining duties to render performance under the contract. When a party to a contract gives notice that he will not honor the contract, the other party to the contract is no longer required to make a tender or otherwise to perform under the contract because of the anticipatory breach of the first party."

*Profile Invs. No. 25, LLC v. Ammons East Corp.*, —— N.C. App. ——, ——, 700 S.E.2d 232, 235 (2010) (quoting *Millis Constr. Co. v. Fairfield Sapphire Valley*, 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987) (citations and brackets omitted)).

> For repudiation to result in a breach of contract, "the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute[.]" *Edwards v. Proctor*, 173 N.C. 41, 44, 91 S.E. 584, 585 (1917) (citation and quotation marks omitted). Furthermore, even

a "distinct, unequivocal, and absolute" "refusal to perform" is not a breach "unless it is treated as such by the adverse party." *Id.* (citation and quotation marks omitted). Upon repudiation, the non-repudiating party "may at once treat it as a breach of the entire contract and bring his action accordingly." *Id.* (citation and quotation marks omitted). Thus, breach by repudiation depends not only upon the statements and actions of the allegedly repudiating party but also upon the response of the non-repudiating party. See *id.*

*Id.* at ——, 700 S.E.2d at 235-36. Furthermore, when a party to a contract fails to perform within a specified time, that party is liable in damages for the delay unless the delay is excused or waived by the other party. 17A Am. Jur. 2d Contracts § 607 (2010).

In the instant case, there is nothing in the record showing that plaintiff engaged in anticipatory repudiation. On 12 July 2006, defendants notified plaintiff that the "estimated completion date" of the boat was 7 September 2006 and offered plaintiff a modification of the contract. On 14 July 2006, plaintiff proposed a counteroffer to defendants since delivery of the boat on 7 September 2006 would be "disastrous" and "unacceptable." In its counteroffer, plaintiff put defendants on notice that it would seek damages due to defendants' delay in the completion and delivery of the boat. On 31 July 2006, plaintiff notified defendants that it. was ready, willing, and able to perform under the contract. On 10 August 2006, defendants unilaterally terminated the contract. On 11 August 2006, plaintiff proposed a second counteroffer to resolve its claims for damages for the delay in delivery of the boat. Defendants did not respond to the proposal. On 18 August 2006, defendants signed a contract to sell the boat to a third party, despite plaintiff's repeated requests for performance.

Defendants have failed to show how plaintiff indicated a refusal to perform.To the contrary, the record indicates that plaintiff was ready, willing, and able to perform under the contract, even after defendants unilaterally terminated the contract and sold the boat to Schultz.

Defendants argue that plaintiff engaged in anticipatory repudiation by notifying defendants that it would seek damages caused by the delay in the completion and delivery of the boat. However, plaintiff did not repudiate the contract, nor did plaintiff excuse or waive defendants' delay in completing the boat. Instead, plaintiff notified defendants that it planned to pursue a lawful remedy even though it still desired to perform under the contract. Therefore, plaintiff's pur-

suit of damages was not anticipatory repudiation because when defendants failed to perform within a specified time, they became liable in damages for the delay. The only repudiation in this case was by defendants for notifying plaintiff on 10 August 2006, in writing, that they were "terminating the contract based on [plaintiff's] anticipatory breach . . . ."

Since plaintiff did not breach the contract through anticipatory repudiation, defendants were not discharged from their duties to render performance. Defendants failed to show that plaintiff refused to perform in any way under the contract. Therefore, plaintiff was entitled to judgment as a matter of law, and the trial court properly granted summary judgment for plaintiff.

### b. Time-of-the-Essence Clause

Defendants also argue that since the contract did not state that the time for delivery of the boat was of the essence, then as a matter of law, time was not of the essence. Therefore, defendants argue that since plaintiff: (1) insisted that defendants were required to perform at the closing date stated in the contract, and (2) declared them in default for failure to do so, then plaintiff breached the contract. We disagree.

The contract in the instant case was a contract for the sale of goods, *i.e.*, a boat. Therefore, North Carolina's version of the Uniform Commercial Code ("U.C.C.") applies. N.C. Gen. Stat. § 25-2-102 (2008). The general rule at common law is that, unless a contract expressly provides otherwise, time is not of the essence in the performance of a contract of purchase and sale. *Harris v. Stewart*, 193 N.C. App. 142, 146, 666 S.E.2d 804, 807 (2008). However, for time to be of the essence, it must be so stated in the contract, or the court must "find anything in the contract or in the parties' actions which demonstrate their intent to make time of the essence." *Johnson v. Smith, Scott & Assoc., Inc.*, 77 N.C. App. 386, 390, 335 S.E.2d 205, 207 (1985).

Since the UCC does not include an express provision relating to the determination of when time is deemed to be of the essence, the common law rules apply. *See* N.C. Gen. Stat. § 25-1-103(b) (2008) ("[u]nless displaced by the particular provisions of this Chapter, the principles of law and equity . . . supplement its provisions."). N.C. Gen. Stat. § 25-2-309 provides that when the time for delivery in a contract for the sale of goods is not stated, "the time . . . shall be a reasonable time." N.C. Gen. Stat. § 25-2-309.

**D.G. II, LLC v. NIX**

[211 N.C. App. 332 (2011)]

In the instant case, although there is no "time-of-the-essence" provision in the contract regarding the date of delivery of the boat, the time for the delivery was on or before 31 July 2006. The contract merely stated that "[t]he parties acknowledge that the vessel is approximately 75% complete at the date of this agreement and completion is estimated to be achieved by July 31, 2006[,]" and that "[c]losing on the transfer of title and delivery of possession of the vessel will occur on or before July 31, 2006, at [defendants'] facility . . . ."

On 12 July 2006, defendants notified plaintiff that the "estimated completion date" of the boat was 7 September 2006 and offered plaintiff a modification of the contract. On 14 July 2006, plaintiff proposed a counteroffer to defendants stating that delivery of the boat on 7 September 2006 would be "disastrous" and "unacceptable" because of its inability to proceed with its business plan for the operation of a commercial sport fishing enterprise during the period of 1 August 2006 until 18 October 2006. On 31 July 2006, plaintiff notified defendants that it was ready, willing, and able to perform under the contract, and also that it was willing to take delivery of the boat after that date in accordance with the terms of the contract. Furthermore, in December 2006 and March 2007, plaintiff notified defendants that it was still ready, willing, and able to proceed under the contract. However, on 10 August 2006, ten days after the scheduled completion date in the contract, defendants unilaterally terminated the contract. On 18 August 2006, defendants signed a contract to sell the boat to Schultz. On 24 April 2007, defendants entered into a second contract to sell the boat to Schultz, despite plaintiff's repeated requests for performance.

These facts demonstrate that plaintiff made statements and took actions manifesting an intent that the closing could occur at a later date and never insisted on closing on the specified closing date of 31 July 2006. These facts further establish that defendants have not shown that there is a genuine issue of material fact that plaintiff required defendants to perform at the closing date stated in the contract. More importantly, plaintiff never declared that defendants were in default for failure to do so. "Because by their words and conduct, defendants indicated that they would no longer honor the contract, plaintiff was excused from its obligation to tender the purchase price and had an action for breach of contract." *Phoenix Ltd. P'ship v. Simpson*, —— N.C. App. ——, ——, 688 S.E.2d 717, 725 (2009). Therefore, the trial court properly concluded that plaintiff was entitled to judgment as a matter of law.

**D.G. II, LLC v. NIX**

[211 N.C. App. 332 (2011)]

## c. The Deposit

[2] Defendants argue that because they were entitled to judgment as a matter of law on the issue of contract liability, the trial court erred in determining as a matter of law that defendants were required to refund plaintiff's $100,000.00 deposit along with interest. We disagree.

When a seller breaches a contract for the sale of goods by failing to deliver or by repudiating the contract, the buyer may recover the amount of the purchase price already paid. N.C. Gen. Stat. § 25-2-711(1) (2008). Furthermore:

> In an action for breach of contract, . . . the amount awarded on the contract bears interest from the date of breach. [] If the parties have agreed in the contract that the contract rate shall apply after judgment, then interest on an award in a contract action shall be at the contract rate after judgment; otherwise it shall be at the legal rate.

N.C. Gen. Stat. § 24-5(a) (2008). "The legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more." N.C. Gen. Stat. § 24-1.

In the instant case, plaintiff deposited $100,000.00 of the purchase price of the boat with defendants. Since defendants, as sellers, breached the contract, plaintiff was therefore entitled, under the U.C.C., to recover the amount of the purchase price it had already paid, i.e., $100,000.00, with interest. The trial court properly determined, as a matter of law, that defendants breached the contract and that plaintiff was entitled to recover its $100,000.00 deposit. The trial court also properly ordered defendants to refund plaintiff's $100,000.00 deposit with interest at a rate of eight percent from 10 August 2006 until paid. Defendants' issue on appeal is overruled.

## III. CONCLUSION

Defendants unilaterally terminated the contract nine days after the original completion date as contemplated by the contract and subsequently sold the boat to a third party at a substantially higher price. Defendants failed to deliver the boat within a reasonable time and, as such, breached the contract. The trial court properly granted plaintiff's motion for partial summary judgment and denied defendants' motion for summary judgment. The trial court's order is affirmed.

Affirmed.

Judges STROUD and HUNTER, JR., Robert N. concur.