ENOCHS, Judge.
 

 *430
 
 The North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau") appeals from the trial court's order dismissing its complaint pursuant to Lillian Dianne Hull's and Annitta B. Crook's ("Defendants") Rule 12(b)(6) motion to dismiss. After careful review, we affirm.
 

 *421
 

 Factual Background
 

 Farm Bureau is an insurer authorized and licensed to issue insurance policies in North Carolina. Hull was insured under a business automobile policy issued by Farm Bureau ("Farm Bureau Policy"). The Farm Bureau Policy, provided a single limit of $100,000.00 in uninsured motorist ("UM") and underinsured motorist ("UIM") coverage, through the North Carolina Uninsured Motorist Coverage Endorsement ("Endorsement"). Crook was listed as a driver under the policy.
 

 In May 2011, Hull was a passenger inside a vehicle, owned and operated by Crook, when another vehicle, owned and operated by Deborah Branham ("Branham"), crossed the center line and collided with Crook's vehicle. Shortly after this initial collision, a third vehicle, operated by Brandon Robinson ("Robinson"), also struck Defendants' vehicle.
 

 Both Hull and Crook were injured during the collision and underwent medical treatment. Hull asserted medical expenses in excess of $58,000.00, and Crook asserted medical expenses in excess of $104,000.00. Five other individuals were injured in the accident, but none of them are parties to this action.
 

 At the time of the accident, Branham was insured under an automobile liability insurance policy issued by Integon/GMAC ("GMAC") with policy limits of $30,000.00 per person and $60,000.00 per accident. Robinson was insured under automobile liability insurance policies by Allstate Insurance Company ("Allstate") with policy limits of $100,000.00 per person and $300,000.00 per accident, and by Mercury Insurance Company ("Mercury") with a policy limit of at least $250,000.00 per person.
 

 As a result of the multiple claims asserted against Branham, GMAC tendered the limits of its liability coverage for Branham to Defendants and the five other individuals injured in the accident. Of those funds, Hull received $10,420.00 and Crook received $16,127.52, for a combined total of $26,547.52. Farm Bureau was given notice of GMAC's tender of Branham's policy limits.
 

 *431
 
 Defendants claimed Branham qualified as an underinsured motorist under the Farm Bureau Policy and asserted a UIM claim. Farm Bureau did not advance, but offered to pay the Defendants' UIM claims for $73,452.48, the $100,000.00 UIM policy limit minus the liability settlements Defendants received from GMAC, Branham's carrier. The letter proposing this particular settlement to Defendants offered to waive Farm Bureau's "subrogation rights to the above referenced claim." The "referenced claim" in this letter addressed only GMAC's tender of Branham's policy limits to Defendants and none others. This offer by Farm Bureau to tender the balance of its UIM limits was also subject to the express condition that Defendants execute and return a Release and Trust Agreement for Underinsured Motorist Coverage ("Settlement Agreement") before the funds accompanying the agreement were disbursed.
 

 Consistent with the Farm Bureau Policy and Endorsement, this Settlement Agreement included a paragraph that expressly preserved Farm Bureau's subrogation rights against any other party from which Defendants might recover damages. This paragraph required Defendants to hold any such money in trust for payment to Farm Bureau pursuant to its subrogation rights. However, both Defendants struck through and initialed this paragraph, signed the altered Settlement Agreements, and returned them to Farm Bureau without the tendered proceeds on 14 March 2012.
 

 Defendants subsequently asserted claims against Robinson, the driver of the third vehicle, for their damages suffered due to his negligence in the accident. When Farm Bureau learned of this additional potential recovery, it claimed subrogation rights against any recovery from Robinson or his insurance companies.
 

 Farm Bureau subsequently filed the present Complaint for Declaratory Judgment to determine and establish those rights on 1 May 2015. On 9 July 2015, Defendants notified Farm Bureau their claims against Robinson and his insurance companies had settled. Crook settled her claim against Robinson for a payment of $140,000.00. Hull settled her claim for $75,000.00.
 

 *422
 
 On 4 February 2016, the trial court heard Defendants' Rule 12(b)(6) motion to dismiss. Prior to the hearing Farm Bureau amended its complaint to add a second claim for relief seeking monetary damages. Farm Bureau filed this amendment with both Defendants' and the court's consent. At the hearing, Defendants informed the court that their pending Rule 12(b)(6) motion was also being asserted against the amendment to the complaint filed that day.
 

 *432
 
 On 23 February 2016, the trial court entered an order granting Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. It is from this order that Farm Bureau appeals.
 

 Analysis
 

 On appeal, Farm Bureau contends that the trial court erred in granting Defendants' motion to dismiss. We disagree.
 

 The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true. Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. On appeal of a 12(b)(6) motion to dismiss, this Court conducts a
 
 de novo
 
 review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
 

 Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.
 
 ,
 
 231 N.C.App. 70
 
 , 74,
 
 752 S.E.2d 661
 
 , 663-64 (2013) (quoting
 
 Burgin v. Owen
 
 ,
 
 181 N.C.App. 511
 
 , 512,
 
 640 S.E.2d 427
 
 , 428-29 (2007) ).
 

 In the present case, Farm Bureau argues that its subrogation claims are not barred by the applicable statute of limitations. It contends that the breach of its insurance policies with Defendants occurred when Defendants reached a settlement with Robinson's insurance carrier and Defendants refused to pay Farm Bureau under the subrogation clause of Hull's policy.
 

 Defendants, conversely, contend that the breach of Hull's policy occurred when they marked out the subrogation clause of the policy, initialed it, and remitted it to Farm Bureau along with a letter stating that they no longer intended to honor Farm Bureau's subrogation rights. If Farm Bureau is correct as to the time of breach, its claim is timely. However, if Defendants are correct, Farm Bureau's claim is time-barred.
 

 " 'The statute of limitations for a breach of contract action is three years. The claim accrues at the time of notice of the breach.' "
 

 *433
 

 Ludlum v. State
 
 ,
 
 227 N.C.App. 92
 
 , 94,
 
 742 S.E.2d 580
 
 , 582 (2013) (quoting
 
 Henlajon, Inc. v. Branch Highways, Inc.
 
 ,
 
 149 N.C.App. 329
 
 , 335,
 
 560 S.E.2d 598
 
 , 603 (2002) ).
 

 In the present case, Farm Bureau's complaint reveals on its face that it alleged Defendants breached their contract on 14 March 2012 when Defendants expressly manifested their intent not to honor Farm Bureau's subrogation rights. The complaint plainly states the following:
 

 11. By letter date March 9, 2012, Farm Bureau offered to settle Hull and Crook's UIM claims for the total sum of $73,452.48 (representing the difference between the UIM policy limits of $100,000.00 and the liability settlements in the sum of $26,547.52 that Hull and Crook received from Integon/GMAC) on the condition that Hull and Crook execute and return a Release and Trust Agreement for Underinsured Motorist Coverage. True, genuine and authentic copies of Farm Bureau's March 9, 2012, letter and the Release and Trust Agreement are attached hereto as Exhibit B and incorporated herein by reference.
 

 12. Contrary to the express condition of settlement, Hull and Crook materially altered the Release and Trust Agreement by marking through its second paragraph, signed the altered Release and Trust
 
 *423
 
 Agreements, returned it to Farm Bureau by letter date March 14, 2012, and negotiated Farm Bureau's check. Copies of the March 14, 2012, letter and the altered Release and Trust Agreements are attached hereto as Exhibit C and incorporated herein by reference.
 

 13. Hull and Crook had no authority or right to negotiate the settlement checks on any terms other than those offered by Farm Bureau.
 

 14. Farm Bureau demanded that Hull and Crook return the settlement funds, but Hull and Crook refused to do so.
 

 It is readily apparent from Farm Bureau's own complaint that it alleged breach of the subject insurance policy occurred on 14 March 2012 when Defendants (1) expressly stated to Farm Bureau that they were not honoring their subrogation rights; (2) marked out and initialed the paragraph on the Release and Trust Agreements for Underinsured Motorist Coverage concerning subrogation; and (3) refused to return the settlement funds despite Farm Bureau's express demand that they do so.
 

 *434
 
 In the present case, there existed more than the mere apprehension or the mere threat of an action-indeed, Farm Bureau alleged two claims in its amended complaint and did not "relinquish" the first claim of Defendants' obligation to return the $73,452.48 until it did so in its briefs and at oral argument. The claim for that money accrued when Defendants affirmatively declared the funds would not be returned-a clear disagreement and, necessarily, more than a threat or apprehension of a lawsuit.
 

 Even assuming
 
 arguendo
 
 that Defendants' actions were not a direct breach of contract, Defendants actions would alternatively, at the very least, constitute an anticipatory breach of contract which would begin to toll the three-year statute of limitations.
 

 The doctrine of anticipatory breach is well known: when a party to a contract gives notice that he will not honor the contract, the other party to the contract is no longer required to make a tender or otherwise perform under the contract because of the anticipatory breach of the first party. Because by their words and conduct, defendants indicated that they would no longer honor the contract, plaintiff was excused from its obligation to tender the purchase price
 
 and had an action for breach of contract
 
 .
 

 Phoenix Ltd. P'ship of Raleigh v. Simpson
 
 ,
 
 201 N.C.App. 493
 
 , 505,
 
 688 S.E.2d 717
 
 , 725 (2009) (internal citation and quotation marks omitted and emphasis added). Our Supreme Court has long held that "[i]t is established by the decisions in this jurisdiction ... [t]hat the cause of action [for breach of contract] accrues at the time of default, which may arise from abandonment
 
 or anticipatory breach
 
 [.]"
 
 Lipe v. Citizens' Bank & Trust Co.
 
 ,
 
 207 N.C. 794
 
 , 795-96,
 
 178 S.E. 665
 
 , 666 (1935) (emphasis added).
 

 "Breach may also occur by repudiation. Repudiation is a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties. When a party repudiates his obligations under the contract
 
 before
 
 the time for performance under the terms of the contract, the issue of anticipatory breach or breach by anticipatory repudiation arises."
 
 Millis Const. Co. v. Fairfield Sapphire Valley, Inc.
 
 ,
 
 86 N.C.App. 506
 
 , 510,
 
 358 S.E.2d 566
 
 , 569 (1987) (internal citations omitted). "[F]or a breach of contract action, the claim accrues upon breach."
 
 Miller v. Randolph
 
 ,
 
 124 N.C.App. 779
 
 , 781,
 
 478 S.E.2d 668
 
 , 670 (1996).
 

 *435
 
 In the present case, the tortfeasors were known to the parties at the time of Defendants' clear and unambiguous repudiation of Farm Bureau's subrogation rights. Despite this fact, Farm Bureau did not initiate its cause of action based upon these subrogation rights until 1 May 2015-over three years after Defendants' express anticipatory breach of them on 14 March 2012.
 

 Consequently, the trial court did not err in dismissing Farm Bureau's complaint for failing to bring its lawsuit based upon its subrogation rights within the applicable three year statute of limitations. "Having resolved this case on that issue, we need not consider the remaining issues presented by the parties to this Court, and any discussion of them would be obiter dictum."
 

 *424
 

 Stark ex rel. Jacobsen v. Ford Motor Co.
 
 ,
 
 365 N.C. 468
 
 , 481,
 
 723 S.E.2d 753
 
 , 761-62 (2012).
 

 Conclusion
 

 For the reasons stated above, the trial court's order granting Defendants' motion to dismiss is affirmed.
 

 AFFIRMED.
 

 Chief Judge McGEE concurs.
 

 Judge TYSON concurring in part, dissenting in part in a separate opinion.
 

 TYSON, Judge, concurring in part, dissenting in part.
 

 The majority's opinion concludes Farm Bureau's claim was barred by the applicable statute of limitations, and as such does not address the merits of this case. I concur with the majority that Farm Bureau's breach of contract claim is time-barred, but only to the extent Farm Bureau's claim asserted Defendants were obligated to return the sum of $73,452.48 paid to them pursuant to their UIM claims. Farm Bureau waived this claim in its briefs and again at oral argument.
 

 Rather, Farm Bureau has requested (1) a declaration that it is subrogated to the proceeds of the Robinson recovery to the extent of its prior payment of UIM benefits to Defendants; and, (2) a recovery from Defendants out of the proceeds from the Robinson recovery offsetting the amount Farm Bureau previously paid Defendants under Defendant Hull's policy. The majority does not attempt to distinguish Farm Bureau's breach of contract claim from its declaratory judgment action, and
 
 *436
 
 argues all claims are time-barred. Farm Bureau's declaratory judgment action and request for recovery from the Robinson proceeds are timely filed and are not time-barred under the statute. I respectfully dissent.
 

 I. Statute of Limitations
 

 Defendants argue the complaint demonstrates Farm Bureau's claim is barred by the applicable three year statute of limitations. They assert Farm Bureau's subrogation claim arose when Farm Bureau made payments to Defendants. They point out the record demonstrates Farm Bureau forwarded funds on 9 March 2012, which Defendants received on 12 March 2012, and Farm Bureau was made aware that Defendants altered the Settlement Agreement by 15 March 2012. Farm Bureau's complaint was filed 1 May 2015.
 

 Farm Bureau responds its subrogation claim could not and did not accrue until settlement proceeds from Robinson were tendered to Defendants, as Farm Bureau had not suffered any subrogation damages prior to that point.
 

 The majority holds Farm Bureau's complaint was time-barred because a breach of contract occurred when the Defendants struck through the subrogation language in the Settlement Agreements, and Farm Bureau brought its action more than three years after that point. Farm Bureau's initial complaint, which asserted "Defendants are obligated to return the sum of $73,452.48" received pursuant to their initial UIM claim, would be barred by the statute of limitations. Farm Bureau tendered those funds over three years prior to bringing its claims.
 

 However, Farm Bureau explicitly relinquished this contract claim in its briefs and at oral argument, stating, "Farm Bureau waives any claim for the return of the specific funds paid to the Defendants under the UM/UIM provisions of the Farm Bureau Policy, to the extent that such a claim was asserted in its Complaint." Rather, Farm Bureau is timely seeking (1) a declaration that it is subrogated to the proceeds of the Robinson recovery to the extent of its prior payment of UIM benefits to Defendants; and, (2) a recovery from Defendants out of those proceeds from Robinson offsetting UIM benefits Farm Bureau had previously paid. These claims were timely filed and are not barred by the statute of limitations.
 

 A. Standard of Review
 

 " 'Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ... when some fact disclosed in the complaint necessarily defeats the plaintiff's
 
 *437
 
 claim.' "
 
 Carlisle v. Keith
 
 ,
 
 169 N.C.App. 674
 
 , 681,
 
 614 S.E.2d 542
 
 , 547 (2005) (quoting
 
 Hooper v. Liberty Mut. Ins. Co.
 
 ,
 
 84 N.C.App. 549
 
 , 551,
 
 353 S.E.2d 248
 
 , 250 (1987) ). Therefore, "[an affirmative]
 
 *425
 
 statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim."
 
 Horton v. Carolina Medicorp, Inc.
 
 ,
 
 344 N.C. 133
 
 , 136,
 
 472 S.E.2d 778
 
 , 780 (1996).
 

 B. Analysis
 

 Neither party disputes and we agree the applicable statute of limitations in this case is three years.
 
 See
 

 N.C. Gen. Stat. § 1-52
 
 (1) (2015) (three-year statute of limitations for breach of contract claims);
 
 N.C. Gen. Stat. § 1-52
 
 (2) (2015) (establishing three-year statute of limitations for statutorily-based claims for which no other statute of limitation is provided);
 
 Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.
 
 ,
 
 277 N.C. 216
 
 , 222,
 
 176 S.E.2d 751
 
 , 756 (1970) (applying the three-year statute of limitations from
 
 N.C. Gen. Stat. § 1-52
 
 (1) to a claim for equitable subrogation). Rather, this issue concerns when Farm Bureau's right of action to file a claim accrued, and commenced the running of the statute of limitations.
 

 "In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises[.]"
 
 Thurston Motor Lines, Inc. v. General Motors Corp.
 
 ,
 
 258 N.C. 323
 
 , 325,
 
 128 S.E.2d 413
 
 , 415 (1962) (citations and quotation marks omitted). The statute of limitations "cannot begin to run against an aggrieved party who under no circumstances could have maintained an action at the time the wrongful act was committed
 
 until
 
 that aggrieved party becomes entitled to maintain an action."
 
 Williams v. General Motors Corp.
 
 ,
 
 393 F.Supp. 387
 
 , 392 (M.D.N.C. 1975),
 
 aff'd
 
 ,
 
 538 F.2d 327
 
 (4th Cir. 1976) (emphasis in original);
 
 see
 

 Penley v. Penley
 
 ,
 
 314 N.C. 1
 
 , 20,
 
 332 S.E.2d 51
 
 , 62 (1985) ("In no event can a statute of limitation begin to run until plaintiff is entitled to institute action."). For example, in breach of contract actions, "[t]he claim accrues at the time of notice of the breach."
 
 Henlajon, Inc. v. Branch Highways, Inc.,
 

 149 N.C.App. 329
 
 , 335,
 
 560 S.E.2d 598
 
 , 603 (2002).
 

 In contrast, courts only exercise jurisdiction in declaratory judgment actions where an "actual controversy" exists between the parties.
 
 Gaston Bd. of Realtors, Inc. v. Harrison
 
 ,
 
 311 N.C. 230
 
 , 234,
 
 316 S.E.2d 59
 
 , 61 (1984). Our Supreme Court has acknowledged, while the "actual controversy" rule is difficult to apply in some cases, "[a] mere difference of opinion between parties does not constitute a controversy within the
 
 *438
 
 meaning of the Declaratory Judgment Act."
 
 Id
 
 . (citation and quotation marks omitted).
 

 "Mere apprehension or the mere threat of an action or a suit is not enough."
 
 Id
 
 . Litigation must appear unavoidable for an actual controversy to exist.
 
 Id
 
 . "Thus the Declaratory Judgment Act does not 'require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise.' "
 
 Id
 
 . (quoting
 
 Town of Tryon v. Duke Power Co.,
 

 222 N.C. 200
 
 , 204,
 
 22 S.E.2d 450
 
 , 453 (1942) ).
 

 Here, Farm Bureau did not waive its subrogation rights. As noted, the waiver contained in Farm Bureau's initial settlement offer to Defendants only waived subrogation rights to the "above referenced claim," specifically GMAC's tender of Branham's policy limits to Defendants, and did not waive its future subrogation rights against other recoveries.
 

 The majority holds the statute of limitations began to run when Defendants altered the Settlement Agreements and retained the proceeds tendered therewith, as this constituted an anticipatory breach and repudiation of the contract. The majority, quoting
 
 Millis Const. Co. v. Fairfield Sapphire Valley, Inc.
 
 ,
 
 86 N.C.App. 506
 
 , 510,
 
 358 S.E.2d 566
 
 , 569 (1987), states:
 

 Repudiation is a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties. When a party repudiates his obligation under the contract before the time for performance under the terms of the contract, the issues of anticipatory breach or breach by anticipatory repudiation arises. (emphasis and citations omitted).
 

 However, this Court has further explained:
 

 For repudiation to result in a breach of contract, "the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must
 
 *426
 
 be distinct, unequivocal, and absolute[.]"
 
 Edwards v. Proctor
 
 ,
 
 173 N.C. 41
 
 , 44,
 
 91 S.E. 584
 
 , 585 (1917) (citation and quotation marks omitted).
 
 Furthermore, even a "distinct, unequivocal, and absolute" "refusal to perform" is not a breach "unless it is treated as such by the adverse party."
 

 Id
 
 . (citation and quotation marks omitted). Upon repudiation, the non-repudiating party "
 
 may
 
 at once treat it as a breach of the entire contract and bring his action
 
 *439
 
 accordingly."
 
 Id
 
 . (citation and quotation marks omitted). Thus, breach by repudiation depends not only upon the statements and actions of the allegedly repudiating party but also upon the response of the non-repudiating party.
 
 See
 
 id.
 

 D.G. II, LLC. v. Nix
 
 ,
 
 211 N.C.App. 332
 
 , 338-339,
 
 712 S.E.2d 335
 
 , 340-41 (2011) (emphases supplied) (quoting
 
 Profile Invs. No. 25, LLC v. Ammons East Corp.
 
 ,
 
 207 N.C.App. 232
 
 , 237,
 
 700 S.E.2d 232
 
 , 235-36 (2010) )
 

 Here, Farm Bureau did not treat Defendants' action of altering the Settlement Agreements as a "breach of the entire contract."
 
 See
 

 id
 
 . Rather, Farm Bureau allowed Defendants to retain the tender of the UIM benefits, which Farm Bureau acknowledges Defendants were rightfully owed under the policy. As stated in Defendants' answer, Farm Bureau "agreed to allow Defendants to have full use and control of said UIM funds, with the parties agreeing to disagree as to each other's position regarding subrogation rights as against future recoveries." As such, an anticipatory breach did not occur.
 

 At the time of Farm Bureau's tender of the UIM policy limits, no other recovery existed from which Farm Bureau could seek to be subrogated. As addressed below, the purpose of UIM coverage is "to place a policy holder
 
 in the same position that the policy holder would have been in
 
 if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage."
 
 Nationwide Mut. Ins. Co. v. Haight
 
 ,
 
 152 N.C.App. 137
 
 , 142,
 
 566 S.E.2d 835
 
 , 838 (2002) (emphasis supplied) (citations and quotation marks omitted),
 
 disc. rev. denied
 
 ,
 
 356 N.C. 675
 
 ,
 
 577 S.E.2d 627
 
 (2003). If Defendants had never received any additional recovery from Robinson, who was fully insured, Farm Bureau could not have asserted any subrogation rights.
 

 Similarly, had Defendants recovered an amount from Robinson less than the $73,452.48 UIM benefits paid by Farm Bureau, Farm Bureau would have only been entitled to subrogation rights against the additional recovery in the amount actually received by Defendants, and not the full amount it had previously paid to Defendants. Here, Defendants received an amount in excess of the $73,452.48 Farm Bureau had previously paid, which allowed Farm Bureau to assert subrogation rights against the additional recovery for the entire amount previously paid under the UIM policy.
 

 Under the Farm Bureau Policy and Endorsement, Farm Bureau's subrogation rights are
 
 directly dependent
 
 upon an additional recovery by Defendants. Until Defendants received the additional recovery
 
 *440
 
 from the fully insured Robinson and then denied Farm Bureau subrogation, Farm Bureau had no actionable claim for subrogation. As such, no actionable claim for a declaration of its subrogation rights could or did arise until Defendants' recovery and denial.
 
 See
 

 Gaston Bd. of Realtors
 
 ,
 
 311 N.C. at 234
 
 ,
 
 316 S.E.2d at 61
 
 .
 

 If Farm Bureau had brought a declaratory judgment action for subrogation at any time between its tender of the UIM limits and notice of Robinson's settlement, no actual controversy would have supported its claim.
 
 See
 

 id
 
 . The declaratory judgment action in this case did not accrue until after Farm Bureau was notified of Defendants' settlement proceedings with Robinson, Defendants denied Farm Bureau's subrogation rights to those accessible funds, and "litigation appear[ed] unavoidable."
 
 Id
 
 . Farm Bureau timely filed its action for declaratory judgment within three years after receiving notice of Defendants' negotiations with Robinson, ultimate payment by Robinson, and Defendants' refusal to subrogate.
 
 See
 

 N.C. Gen. Stat. § 1-52
 
 .
 

 Farm Bureau's declaratory judgment action and claim for recovery from the proceeds received by Defendants from fully insured tortfeasor Robinson is properly filed and is not barred by the statute of limitations
 
 *427
 
 applicable to the Defendants' original breach of contract. Because I would hold these remaining claims are not time-barred, I address the other issues raised by Farm Bureau in this case.
 

 II. Preservation of Farm Bureau's Arguments for Subrogation Rights Under the Endorsement and
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4)
 

 Farm Bureau asserts it properly preserved its claims for appeal based upon the Endorsement and
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4). I agree.
 

 A. Standard of Review
 

 This Court has repeatedly held "the law does not permit parties to swap horses between courts in order to get a better mount, meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court."
 
 Wood v. Weldon,
 

 160 N.C.App. 697
 
 , 699,
 
 586 S.E.2d 801
 
 , 803 (2003) (citations and quotation marks omitted).
 

 B. Analysis
 

 Farm Bureau's complaint requests the trial court to "enter a Declaratory Judgment ...
 
 construing the BAP policy
 
 ." (emphasis supplied). Defendants contend this language limits Farm Bureau's
 
 *441
 
 arguments to the main policy and does not include the Endorsement. I disagree.
 

 The Farm Bureau Policy provides additional coverage to Defendants through the North Carolina Uninsured Motorist Coverage Endorsement (the "Endorsement"). This additional coverage includes both UM and UIM coverage for bodily injury, as the term "underinsured motor vehicle" is included within the definition of "uninsured motor vehicle" in the Endorsement. The Endorsement is an essential part and extension of Farm Bureau's Policy. As such, Farm Bureau properly preserved its arguments regarding the Endorsement's UM and UIM coverage.
 

 Farm Bureau also properly preserved its arguments under
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4). North Carolina law clearly states the provisions of
 
 N.C. Gen. Stat. § 20-279.21
 
 are read into the Farm Bureau Policy to the same extent as if they were actually incorporated therein: "Where a statute is applicable to a policy of insurance, the provisions of the statute enter into and form a part of the policy to the same extent as if they were actually written into it."
 
 Lichtenberger v. American Motorists Ins. Co
 
 .,
 
 7 N.C.App. 269
 
 , 272,
 
 172 S.E.2d 284
 
 , 286-87 (1970) (emphasis, citations, and quotation marks omitted). When Farm Bureau sought a declaration of its subrogation rights by "construing the BAP policy," the Endorsement and applicable statutory provisions were also properly incorporated therein and were before the trial court to consider.
 

 III. Farm Bureau's Subrogation Rights Under the Endorsement and
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4)
 

 Neither party disputes Branham, the initial tortfeasor, was an underinsured motorist or that upon GMAC's tender of Branham's policy limits, Defendant Hull was able to access her UIM coverage under the Farm Bureau Policy and Endorsement. Rather, Farm Bureau argues the Farm Bureau Policy, Endorsement, and
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4), expressly provide subrogation rights to Farm Bureau with respect to Defendants' recovery from Robinson. Farm Bureau also asserts that neither the statute nor the Farm Bureau Policy and Endorsement require that Farm Bureau advance its policy limits in regards to the GMAC tender to preserve its subrogation rights against any future recovery by Defendants.
 

 A. Standard of Review
 

 When considering a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure, "[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are
 
 *442
 
 sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."
 
 Harris v. NCNB Nat. Bank of N.C.
 
 ,
 
 85 N.C.App. 669
 
 , 670-71,
 
 355 S.E.2d 838
 
 , 840 (1987).
 

 In order to overcome such a motion, a plaintiff is not required to "conclusively establish" any factual issue in the case. Rather, the only question properly before a court reviewing a Rule 12(b)(6) motion is whether "the complaint states a claim for which relief can be granted under some
 
 *428
 
 legal theory when the complaint is liberally construed and all the allegations included therein are taken as true."
 

 Feltman v. City of Wilson
 
 ,
 
 238 N.C.App. 246
 
 , 256,
 
 767 S.E.2d 615
 
 , 622 (2014) (emphasis, citation, and quotation marks omitted). The allegations in the complaint, taken as true, must be reviewed in the light most favorable to the nonmoving party.
 
 Donovan v. Fiumara
 
 ,
 
 114 N.C.App. 524
 
 , 526,
 
 442 S.E.2d 572
 
 , 574 (1994).
 

 B. Analysis
 

 The Motor Vehicle Safety and Financial Responsibility Act of 1953 (the "Act") "is a remedial statute and the underlying purpose is the protection of innocent victims who have been injured by financially irresponsible motorists."
 
 Haight v. Travelers/Aetna Property Casualty Corp.
 
 ,
 
 132 N.C.App. 673
 
 , 678,
 
 514 S.E.2d 102
 
 , 106,
 
 disc. review denied
 
 ,
 
 350 N.C. 831
 
 ,
 
 537 S.E.2d 824
 
 (1999) ;
 
 N.C. Gen. Stat. § 20-271.1
 
 -.39 (2015). "The terms of the Act are written into every North Carolina automobile liability policy, and where the terms of a policy conflict with those of the Act, the Act will prevail."
 
 Farm Bureau Ins. Co. of N.C., Inc. v. Blong
 
 ,
 
 159 N.C.App. 365
 
 , 369,
 
 583 S.E.2d 307
 
 , 310,
 
 disc. review denied
 
 ,
 
 357 N.C. 578
 
 ,
 
 589 S.E.2d 125
 
 (2003).
 

 The Act includes provisions outlining the requirements for both UM and UIM coverage.
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4) (2015). UM coverage "fill[s] the gap" in situations where a tortfeasor has no liability insurance. James E. Snyder, Jr.,
 
 North Carolina Automobile Insurance Law
 
 § 30-1 (3d ed.1999).
 

 Whereas, UIM coverage is a secondary source of recovery, which "allows the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate fully the injured party."
 
 Nationwide Mut. Ins. Co. v. Mabe
 
 ,
 
 342 N.C. 482
 
 , 494,
 
 467 S.E.2d 34
 
 , 41 (1996) (citation and quotation marks omitted);
 
 see
 
 Snyder,
 
 North Carolina Automobile Insurance Law
 
 § 30-1. "UIM coverage is intended
 
 *443
 
 to place a policy holder
 
 in the same position that the policy holder
 

 would have been in
 
 if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage."
 
 Nationwide Mut. Ins. Co. v. Haight
 
 ,
 
 152 N.C.App. at 142
 
 ,
 
 566 S.E.2d at 838
 
 (emphasis supplied). An injured party is not entitled to and may not obtain UIM proceeds, if the tortfeasor's insurance is sufficient to compensate his damages or if it is greater than his UIM coverage.
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4).
 

 In support of this interpretation of the statute, both the UM and UIM provisions of the Act provide an insurer with subrogation rights against additional recovery received by the injured party. For subrogation rights under UM coverage,
 
 N.C. Gen. Stat. § 20-279
 
 -21(b)(3) provides:
 

 In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of coverage, the insurer making payment shall, to the extent thereof, be entitled to the proceeds of any settlement for judgment resulting from the exercise of any limits of recovery of that person against
 
 any person or organization legally responsible for the bodily injury for which the payment is made
 
 , including the proceeds recoverable from the assets of the insolvent insurer.
 

 N.C. Gen. Stat. § 20-279.21
 
 (b)(3) (emphasis supplied).
 

 The subrogation rights of insurers under the UIM provision are more limited:
 

 An underinsured motorist insurer may at its option, upon a claim pursuant to underinsured motorist coverage, pay moneys without there having first been an exhaustion of the liability insurance policy covering the ownership, use, and maintenance of the underinsured highway vehicle. In the event of payment, the underinsured motorist insurer shall be either: (a) entitled to receive by assignment from the claimant any right or (b) subrogated to the claimant's right regarding any claim the claimant has or had against the owner, operator, or maintainer of the underinsured highway vehicle, provided that the amount of the insurer's right by subrogation or assignment shall not exceed payments made to the claimant by the insurer.
 
 No insurer shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of
 

 *429
 

 the underinsured highway vehicle under a policy providing coverage against an underinsured
 

 *444
 

 motorist where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice.
 

 N.C. Gen. Stat. § 20-279.21
 
 (b)(4) (emphasis supplied).
 

 1. Subrogation Rights Against Recovery from Joint Tortfeasors
 

 This Court has previously considered whether the plain language of
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3)-(4) extend and protect an insurer's subrogation rights against a joint tortfeasor, who is not underinsured.
 
 Blong
 
 ,
 
 159 N.C.App. at 371
 
 ,
 
 583 S.E.2d at 310-11
 
 . In
 
 Blong
 
 , a drunk driver ran a red light and struck another vehicle containing five teenagers.
 
 Id
 
 . at 366,
 
 583 S.E.2d at 308
 
 . The drunk driver's insurance carrier tendered the limits of its policy to the victims and their families almost immediately after the accident, but the amount was inadequate to compensate their damages.
 
 Id
 
 .
 

 The victims and their families filed two "dram shop" lawsuits, contending the businesses were negligent in serving alcohol to a person who was already intoxicated.
 
 Id
 
 . at 366-67,
 
 583 S.E.2d at 308
 
 . At the same time, the victims and their families sought further compensation under their own UIM coverage.
 
 Id
 
 . at 367,
 
 583 S.E.2d at 308
 
 . One of the victims was covered under a policy through Farm Bureau, which tendered the full amount it owed under the policy: $250,000.
 
 Id
 
 . The policy had a limit of $300,000 per accident, but the victims already received $50,000 from the drunk driver's insurance company and, like in the present case, Farm Bureau waived its subrogation rights against that initial $50,000 recovery from the underinsured tortfeasor.
 
 Id
 
 . at 366-67,
 
 583 S.E.2d at 308-09
 
 .
 

 Prior to tendering the limits of the policy, Farm Bureau informed the policy holder it would seek an offset of its UIM payments from the amount recovered in the dram shop actions.
 
 Id
 
 . at 367,
 
 583 S.E.2d at 309
 
 . The parties "agreed to disagree" about future subrogation rights.
 
 Id
 
 . Farm Bureau's tender of payment was thus made without prejudice to Farm Bureau's right to seek a determination of its subrogation rights, which was the ultimate question before this Court in
 
 Blong
 
 .
 
 Id
 
 .
 

 Although
 
 Blong
 
 was a UIM case, this Court considered both the provisions of
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3) and (4) regarding UM and UIM coverage in making this determination.
 
 Id
 
 . at 371,
 
 583 S.E.2d at 310-11
 
 . This Court first held the broad language stated in the UM provision
 
 *445
 
 allowing subrogation "against any person or organization legally responsible" also applied to UIM coverage.
 
 Blong
 
 ,
 
 159 N.C.App. at 371
 
 ,
 
 583 S.E.2d at 310-11
 
 . This Court then interpreted that subrogation language to encompass the liability and coverage of the bars involved in the dram shop lawsuits.
 
 Id
 
 . at 373,
 
 583 S.E.2d at 312
 
 .
 

 This Court in
 
 Blong
 
 noted the issue of how to interpret the language of
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3) had arisen, but was not addressed in a prior case because the insurer had waived any rights to subrogation under its policy.
 
 Id
 
 . at 371,
 
 583 S.E.2d at
 
 311 (citing
 
 Silvers v. Horace Mann Ins. Co.,
 

 90 N.C.App. 1
 
 , 11-12,
 
 367 S.E.2d 372
 
 , 378 (1988),
 
 modified and remanded,
 

 324 N.C. 289
 
 ,
 
 378 S.E.2d 21
 
 (1989) ). The policy in
 
 Blong
 
 did not present such an impediment.
 
 Id
 
 . As such, this Court held Farm Bureau was entitled to subrogation for the recovery received as a result of the dram shop lawsuits, and stated "[p]laintiff insurer, by the Act and present policy, is subrogated to defendants' right to recover from
 
 any legally responsible party
 
 ."
 
 Id
 
 . at 372,
 
 583 S.E.2d at 311
 
 (emphasis supplied).
 

 Here, the facts and issues alleged by Farm Bureau in its amended complaint parallel those before this Court in
 
 Blong
 
 .
 
 See
 

 id
 
 . at 366-67,
 
 583 S.E.2d at 308-09
 
 . As in
 
 Blong
 
 , Defendants received an initial settlement from the underinsured driver's insurer, GMAC. Farm Bureau waived subrogation to that amount and paid out the balance of its UIM policy limits to Defendants. This tender of payment was conditioned upon Defendants
 
 *430
 
 signing and returning the Settlement Agreement as tendered, which included a provision providing Farm Bureau with subrogation rights against any recovery received from "any other person or persons, organizations, associations or corporations[.]" Also, as in
 
 Blong
 
 , controversy arose over the subrogation rights of Farm Bureau against any future recovery Defendants received from joint tortfeasors. In both cases, this controversy resulted in Farm Bureau seeking a declaration of its rights once recovery was realized.
 
 See
 

 id
 
 .
 

 When Defendants recovered from Robinson in this case, Farm Bureau properly asserted subrogation rights against Defendants' recovery from Robinson as a "legally responsible party," provided that Farm Bureau had not waived its subrogation rights under the Farm Bureau Policy, Endorsement, and Act.
 
 See
 

 id
 
 . at 371,
 
 583 S.E.2d at 311
 
 . Defendants' answer specifically confirms Farm Bureau had not and did not waive its subrogation rights to future recoveries against other tortfeasors. To do so, as the majority allows here, allows Defendants a double recovery as a result of and arising from their original wrongful conduct.
 

 *446
 

 2. Waiver of Subrogation Rights by Failure to Advance
 

 Relying upon the Farm Bureau Policy and Endorsement,
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4), and North Carolina Supreme Court precedent, Defendants argue when Farm Bureau failed to advance the amount of tentative liability settlement offered by GMAC within thirty days of being notified, this failure resulted in a waiver of Farm Bureau's subrogation rights to any future claims or recoveries from joint tortfeasors. Farm Bureau's complaint admits it was notified of the GMAC settlement offer and that it did not advance. However, Farm Bureau argues its failure to advance only waived its subrogation rights against future recovery from Branham and GMAC; and not advancing did not result in a waiver of its rights against all future claims from any other joint tortfeasors.
 

 Defendants rely on
 
 Lunsford v. Mills
 
 , to argue Farm Bureau was required to advance the tentative liability settlement as a pre-condition to preserve and assert subrogation rights under
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4).
 
 Lunsford v. Mills
 
 ,
 
 367 N.C. 618
 
 ,
 
 766 S.E.2d 297
 
 (2014). Farm Bureau argues
 
 Lunsford
 
 does not hold that UIM insurers cannot waive subrogation recovery from the underinsured tortfeasor, or that UIM insurers must advance their UIM policy limits to preserve their subrogation rights against some future unknown or unidentified recovery from other tortfeasors.
 

 In
 
 Lunsford
 
 , Lunsford sued all the joint tortfeasors in one action claiming they were jointly and severally liable for his injuries.
 
 Id
 
 . at 620,
 
 766 S.E.2d at 299
 
 . While one of the tortfeasors in that action was underinsured, the combined insurance of the tortfeasors was over the limits of Lunsford's UIM coverage with Farm Bureau.
 
 Id
 
 . Pursuant to that action, the underinsured driver's insurance company tendered the limits of its policy to Lunsford.
 
 Id
 
 . Lunsford's attorney notified Farm Bureau of the underinsured driver's tender and demanded Farm Bureau tender payment of Lunsford's UIM claims.
 
 Id
 
 .
 

 Lunsford eventually settled its claims with the other tortfeasors for an amount that exceeded his UIM coverage with Farm Bureau.
 
 Id
 
 . Unlike here, Farm Bureau never tendered the UIM coverage to Lunsford, but filed a motion for summary judgment on Lunsford's UIM claims.
 
 Id
 
 . at 620-21,
 
 766 S.E.2d at 299
 
 . Lunsford also moved for summary judgment, maintaining that his UIM policy "stacked" and he was entitled to receive $350,000-the amount of his aggregated UIM coverage minus the $50,000 recovered from the underinsured driver.
 
 Id
 
 . at 621,
 
 766 S.E.2d at 299-300
 
 . The trial court granted Lunsford's motion for summary judgment and ordered that Farm Bureau pay Lunsford $350,000.
 
 Id
 
 . at 621,
 
 766 S.E.2d at 300
 
 .
 

 *447
 
 Our Supreme Court upheld the trial court's order and held an insured is only required to exhaust the liability insurance of a single at-fault driver in order to trigger payment of UIM benefits.
 
 Id
 
 . at 627,
 
 766 S.E.2d at 303
 
 . In support of its conclusion, the Court briefly addressed subrogation and noted, "[i]f ... insureds were required to
 
 *431
 
 exhaust the liability policies of all at-fault motorists as a prerequisite to recovering UIM coverage, there would be no need to provide UIM carriers subrogation or reimbursement rights, and consequently, these provisions would be rendered meaningless."
 
 Id
 
 . at 628,
 
 766 S.E.2d at 304
 
 .
 

 The Court reiterated that the purpose of the UIM statute is "to place a policy holder in the same position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the ... UIM coverage."
 
 Id
 
 . at 628 n.1,
 
 766 S.E.2d at 304
 
 (quoting
 
 Nationwide Mut. Ins. Co. v. Haight
 
 ,
 
 152 N.C.App. at 142
 
 ,
 
 566 S.E.2d at
 
 838 ). In doing so, the Court noted the statute allows an insurer to "seek recovery of any overpayment through the exercise of its rights to subrogation or reimbursement. Through these mechanisms, insurers are able to recoup any overpayment and insureds are divested of any so-called 'windfall' "
 
 Id
 
 . The effect of the majority's conclusion here specifically allows Defendants a double recovery and the prohibited "windfall."
 

 In
 
 Lunsford
 
 , the insurer, "could have preserved its subrogation rights by advancing its UIM policy limits."
 
 Id
 
 . at 628,
 
 766 S.E.2d at 304
 
 . Contrary to the facts here and before us, the insurer in
 
 Lunsford
 
 had not paid the insured any amounts under the insured's UIM policy or attempted to preserve its rights to subrogation in any other way.
 
 Id
 
 .
 

 While Farm Bureau admits it did not advance in this case, it expressly reserved its subrogation rights through other means. First, unlike in
 
 Lunsford
 
 , this case did not originate as a single action against multiple tortfeasors. Defendants, here, first pursued a claim against the underinsured driver and his carrier, GMAC. Upon notice of this settlement, Farm Bureau, in this case, tendered the policy limits owed to Defendants under the UIM coverage in the Endorsement. Farm Bureau's offer to settle Defendants' UIM claims for $73,452.48 represented the precise difference between the UIM policy limits of $100,000 and the initial liability settlements from GMAC in the sum of $26,547.52. Farm Bureau did not need to preserve its subrogation rights against GMAC, because Farm Bureau's tender of the policy limits already accounted for and credited GMAC's tender of proceeds against the UIM policy limits.
 

 Second, Farm Bureau expressly conditioned the tender upon Defendants' signature and return of the Settlement Agreements
 
 *448
 
 accompanying the proffered check. This Settlement Agreement expressly asserted Farm Bureau's policy and statutory subrogation rights against any future tortfeasor recovery received by Defendants. Unilaterally and without authority, Defendants crossed through that provision providing Farm Bureau subrogation rights to future recovery and failed to return the proceeds check tendered with the Settlement Agreements. Defendants' action was an express rejection of the Settlement Agreement and proceeds as tendered. This action constituted a counter-offer to Farm Bureau, as a rejection of terms as tendered becomes counteroffer.
 
 See
 

 Normile v. Miller
 
 ,
 
 313 N.C. 98
 
 , 103,
 
 326 S.E.2d 11
 
 , 15 (1985) ("[I]f the seller purports to accept but changes or modifies the terms of the offer, he makes what is generally referred to as a qualified or conditional acceptance. ... Such a reply from the seller is actually a counteroffer[.]" (citations and quotation marks omitted)). Farm Bureau never agreed to release its subrogation rights against recovery by Defendants from other joint tortfeasors.
 

 Finally, Farm Bureau did not waive its rights to subrogation under the Farm Bureau Policy and Endorsement. This Court has specifically looked at the coverage provided under the UIM policy in determining whether an insurer has waived its subrogation rights.
 
 See
 

 Blong
 
 ,
 
 159 N.C. App at 371
 
 ,
 
 583 S.E.2d at
 
 311 (citing
 
 Silvers,
 

 90 N.C.App. at 11-12
 
 ,
 
 367 S.E.2d at
 
 378 ). As noted in
 
 Blong
 
 , the broad subrogation language of
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3) is "subject to the terms and conditions of such coverage."
 
 Id
 
 .
 

 The Farm Bureau Policy initially addresses Farm Bureau's subrogation rights under "Transfer of Rights of Recovery Against Others to Us," which states:
 

 If any person or organization to or for whom we make payment under this Coverage
 
 *432
 
 Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.
 

 Like the language in
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(3), this language provides Farm Bureau with broad subrogation rights against "any person or organization" from whom the insured has the right to recover damages.
 

 Under the Endorsement, UIM coverage is only triggered and payable if the insured is damaged by an
 
 underinsured vehicle
 
 . The Endorsement's "Transfer of Rights of Recovery Against Others to Us"
 

 *449
 
 amends, but does not replace, Farm Bureau's subrogation rights concerning its UIM coverage:
 

 a. If we make any payment on the Named Insured's behalf, we are entitled to recover what we paid from other parties. The Named Insured must transfer rights of recovery against others to us. The Named Insured must do everything necessary to secure these rights and do nothing to jeopardize them.
 

 However, our rights under this paragraph do not apply with respect to vehicles described in Paragraphs F.4.a., c. and d. of the definition of "uninsured motor vehicle". For these vehicles, if we make any payment and the Named Insured recovers from another party, that Named Insured must hold the proceeds in trust for us and pay us back the amounts we have paid.
 

 b. Our rights do not apply under this provision with respect to damages caused by an "accident" with [an underinsured] vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:
 

 (1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of [an underinsured] vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and
 

 (2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
 

 Under the Endorsement, the language waiving subrogation rights by failing to advance only and expressly applies to a recovery
 
 from the underinsured vehicle
 
 , and not broadly to anyone from whom the insured has a right to recover. For subrogation rights against damages recovered from any other vehicle, the main provision in the Farm Bureau Policy applies and gives Farm Bureau subrogation rights against anyone from whom the insured has the right to recover damages.
 

 Farm Bureau did not need to preserve its subrogation rights against recovery from GMAC under the Endorsement, because Farm Bureau took that recovery into account as a credit when it tendered the balance of its UIM policy limits to Defendants.
 

 *450
 
 On the other hand, Robinson was not operating an
 
 underinsured vehicle
 
 . As such, the damages caused by Robinson do not meet the definitional trigger required in order for the limitation in the Endorsement to apply. Rather the broad language of the Farm Bureau Policy is applicable, which preserves Farm Bureau's subrogation rights against the recovery from the fully insured Robinson.
 

 UIM coverage "allows the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate fully the injured party."
 
 Nationwide Mut. Ins. Co. v. Mabe
 
 ,
 
 342 N.C. at 494
 
 ,
 
 467 S.E.2d at 41
 
 . Its purpose is not for injured parties to receive a "windfall" and net recovery in excess of their actual damages.
 
 See
 

 Lunsford
 
 ,
 
 367 N.C. at
 
 628 n.1,
 
 766 S.E.2d at
 
 304 ;
 
 Walker v. Penn Nat. Sec. Ins. Co
 
 .,
 
 168 N.C.App. 555
 
 , 558,
 
 608 S.E.2d 107
 
 , 110 (2005) (holding the trial court erred in failing to credit defendant with the $30,000.00 paid by the liability carrier);
 
 N.C. Farm Bureau Mut. Ins. Co. v. Gurley
 
 ,
 
 139 N.C.App. 178
 
 , 183,
 
 532 S.E.2d 846
 
 , 849 (2000) ("While we realize that the insureds will never be fully compensated for their loss, we see no evidence that the legislature intended to award the insureds more than they would have received if the tortfeasor had been insured or uninsured." (citations and quotation marks omitted)).
 

 *433
 
 Farm Bureau's complaint, when viewed in light most favorable to Farm Bureau, alleges a claim upon which relief can be granted.
 
 See
 

 Feltman
 
 ,
 
 238 N.C.App. at 256
 
 ,
 
 767 S.E.2d at 622
 
 . While Farm Bureau admits it did not advance, this case is distinguishable from
 
 Lunsford
 
 , as Farm Bureau tendered the limits of the amount owed to Defendants under the Farm Bureau Policy and Endorsement. Furthermore, as in
 
 Blong
 
 , Farm Bureau tendered this amount on the express condition that its subrogation rights against future recoveries were preserved.
 
 See
 

 Blong
 
 ,
 
 159 N.C.App. at 367
 
 ,
 
 583 S.E.2d at 309
 
 . The trial court erred by granting Defendants' Rule 12(b)(6) motion to dismiss.
 

 3. Applicability to Defendant Crook
 

 Defendants argue the subrogation provisions in the Farm Bureau Policy and Endorsement do not apply to Defendant Crook, as she was not a named insured. I disagree.
 

 The Endorsement's "Transfer of Rights of Recovery Against Others To Us," states, "[i]f we make any payment on the Named Insured's behalf, we are entitled to recover what we paid from other parties.
 
 The Named Insured must transfer rights of recovery against others to us
 
 . The Named Insured must do everything necessary to secure
 
 *451
 
 these rights[.]" (emphasis supplied). While this provision only requires the "Named Insured" to transfer the rights of recovery against others to Farm Bureau, this provision only changes, but does not replace, the Farm Bureau Policy "Transfer of Rights" provision. The Farm Bureau Policy "Transfer of Rights" provision is much broader, and requires "any person or organization to or for whom we make payment" to transfer their rights of recovery against others to Farm Bureau. This includes any recovery received by Defendant Crook. Defendants' argument is without merit.
 

 VIII. Conclusion
 

 While I concur that Farm Bureau's breach of contract claim seeking a return of the UIM benefits paid to Defendants is time-barred, as Farm Bureau stipulates, the remaining Farm Bureau declaratory judgment claims are not time-barred.
 

 Farm Bureau declaratory judgment action and claim for recovery of proceeds received by Defendants from Robinson could not and did not accrue until Farm Bureau received notice of Defendants' negotiations with and payment by Robinson, and Defendants' denied of Farm Bureau's subrogation rights to that recovery. Farm Bureau brought its declaratory judgment action within three years of Defendants' denial of Farm Bureau's subrogation rights to the Robinson recovery, Farm Bureau's claim is not barred by the statute of limitations.
 

 Since the Endorsement and the Act are essential parts and an extension of the Farm Bureau Policy, Farm Bureau properly preserved its arguments under the Farm Bureau Policy, the Endorsement, and the Act. Finally, Farm Bureau's complaint, when viewed in light most favorable to Farm Bureau, alleges a claim upon which relief can be granted.
 

 As such, the trial court erred in granting Defendant's motion to dismiss Farm Bureau's declaratory judgment action. I do not address Farm Bureau's equitable subrogation argument, as the trial court erred in granting Defendants' motion to dismiss. I concur in part and respectfully dissent in part.