Haddock v. Volunteers of Am., Inc., 2021 NCBC 5.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 8065

TONYA A. HADDOCK and
CADENCE DEVELOPMENT, LLC,

      Plaintiffs,

v.

VOLUNTEERS OF AMERICA, INC.;
VOLUNTEERS OF AMERICA
NATIONAL SERVICES; and
SUSSEX VOA AFFORDABLE
HOUSING, LLC,

      Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO STRIKE
AND MOTION TO DISMISS**

1. **THIS MATTER** is before the Court on Defendants' Motion to Strike (the "Motion to Strike"), (ECF No. 9), and Defendants' Motion to Dismiss (the "Motion to Dismiss" and referred to with the Motion to Strike as the "Motions"), (ECF No. 11), each filed on September 23, 2020.

2. For the reasons set forth herein, the Court **DENIES** the Motion to Strike and **GRANTS** in part and **DENIES** in part the Motion to Dismiss.

> *Ellinger & Carr, PLLC by Susan Yelton Ellinger, Jeffrey Ellinger, and Steven Carr, for Plaintiffs Tonya Haddock and Cadence Development, Inc.*
>
> *The Banks Law Firm, P.A. by Jesse H. Rigsby, Theodore Curtis Edwards, and Sherrod Banks, for Defendants Volunteers of America, Inc., Volunteers of America National Services, and Sussex VOA Affordable Housing, LLC.*

Robinson, Judge.

## I. INTRODUCTION

3. This action arises out of a dispute over the development by Plaintiffs and Defendants of a housing project known as The Sussex and the right to the ownership and profits derived from its development.

## II. PROCEDURAL BACKGROUND

4. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

5. Plaintiffs initiated this action on July 22, 2020 with the filing of the Verified Complaint and Demand for Jury Trial (the "Complaint"). (Verified Compl. & Demand for Jury Trial, ECF No. 3 ["Compl."].) That same day, Plaintiffs filed the Notice of Lis Pendens pursuant to N.C.G.S. §§1-116, *et seq*. attaching to four parcels of real property in Wake County, North Carolina. (ECF No. 4.)

6. On September 23, 2020, Defendants filed the Motions and Defendants' Motion to Cancel Notice of Lis Pendens (the "Motion to Cancel"). (ECF No. 13.)

7. Following briefing, the Court held a hearing on the Motions and the Motion to Cancel on November 16, 2020. (*See* ECF No. 29.)

8. On January 10, 2021, the Court entered the Order on Defendants' Motion to Cancel Notice of Lis Pendens and Motion to Expedite cancelling the lis pendens. (ECF No. 50.)

9. The Motions are ripe for resolution.

### III. FACTUAL BACKGROUND

10. The Court does not make findings of fact on the Motions brought pursuant to Rule 12(b)(6) and Rule 12(f) of the North Carolina Rules of Civil Procedure (the "Rule(s)"), but instead only recites those facts included in the Complaint relevant to the Court's determination of the Motions.

**A.** **The Parties**

11. Plaintiff Tonya A. Haddock ("Haddock") is a developer of affordable housing projects. (Compl. ¶ 1.)

12. Plaintiff Cadence Development, LLC ("Cadence Development" and with Haddock referred to herein as "Plaintiffs") is a North Carolina limited liability company. (Compl. ¶ 1.) Haddock is the manager of Cadence Managing Member, LLC, which is the managing member of Cadence Development. (Compl. ¶ 1.)

13. Defendants Volunteers of America, Inc. ("VOA") and Volunteers of America National Services ("VOANS" and with VOA referred to herein as "VOA Defendants") are nonprofit corporations. (Compl. ¶ 1.) VOANS is a wholly controlled subsidiary of VOA. (Compl. ¶ 4.)

14. VOA formed Defendant Sussex VOA Affordable Housing, LLC ("Sussex VOA" and referred to with VOA Defendants as "Defendants"), a North Carolina limited liability company, in December 2019. (Compl. ¶ 1.) VOANS is the managing member of Sussex VOA. (Compl. ¶ 5.) VOA Defendants are the sole members and managers of Sussex VOA. (Compl. ¶ 33.)

## B.    The Sussex

15.    Beginning in 2018, Plaintiffs began working on the development of an affordable housing project in Raleigh, North Carolina known as The Sussex. (Compl. ¶ 1.) As part of the development efforts for The Sussex, Plaintiffs obtained options to purchase four parcels of real property for the development of a 216-unit affordable housing project (the "Purchase Options"). (Compl. ¶ 1.)

16.    On September 21, 2018, John Kirkland ("Kirkland") and Mary Phaneuf, representatives of VOA, contacted Haddock expressing VOA's interest in partnering with Haddock to develop The Sussex. (Compl. ¶ 1.) On September 28, 2018, Kirkland notified Haddock that VOA's Development Review Committee approved VOA proceeding to work with Haddock on the development of The Sussex. (Compl. ¶ 1.)

## C.    The Interim Agreement

17.    Haddock and VOA Defendants entered into an Independent Contractor Agreement on October 16, 2018, which the parties intended to be an interim agreement (the "Interim Agreement"). (Compl. ¶¶ 8, 9; *see also* Compl. Ex. A.) Attachment A to the Interim Agreement provides that Plaintiffs and VOA "shall enter into a future binding agreement that specifies partnership scope and compensation[.]" (Compl. ¶ 15; *see also* Compl. Ex. A.)

18.    Pursuant to the terms of the Interim Agreement, Haddock was to act as a "local developer partner to VOA" to "assist VOA on general strategy, technical sufficiency and completeness of any and all applications related exclusively to The Sussex[,]" and Haddock would receive monthly draws of $10,000 from October 1, 2018

through January 31, 2019. (Compl. ¶¶ 9, 11; *see also* Compl. Ex. A.) VOA expressly agreed to pay Haddock "monthly draws against the Developer Fee share in the amount of 15% and 15% of the annual cash flow, or some mutually-agreed-upon compensation structure." (Compl. ¶ 13; *see also* Compl. Ex. A.)

19. Paragraph 9 of the Interim Agreement provides that "[t]he relationship of [Haddock] to VOA is that of an independent contractor, and nothing in [the Interim] Agreement shall be construed as creating any other relationship." (Compl. Ex. A ¶ 9.)

20. In reliance on VOA's representations, Haddock assigned the Purchase Options to VOA. (Compl. ¶ 16.)

### D. Termination of the Parties' Relationship

21. Less than one month after execution of the Interim Agreement, Haddock performed or commenced performance of all of the developer services described in the Interim Agreement. (Compl. ¶ 17.)

22. Even after the expiration of the compensation period set forth in the Interim Agreement, on January 31, 2019, Haddock continued to coordinate the development of The Sussex, submit invoices to VOA, and receive payments from VOA. (Compl. ¶ 21.) After the expiration of the compensation period, and with the agreement of VOA, Haddock worked to obtain financing from Wake County Housing Authority. (Compl. ¶¶ 17–19.)

23. After financing approval was obtained from the Wake County Housing Authority, on May 30, 2019, Kirkland e-mailed Haddock attaching a proposed revised

agreement for Haddock's involvement in The Sussex and her compensation structure (the "Revised Agreement"). (Compl. ¶¶ 1, 22–24.) Plaintiffs allege that the Revised Agreement was intended to replace the Interim Agreement. (Compl. ¶ 1.) In this e-mail communication, Kirkland advised Haddock to continue sending invoices to VOA. (Compl. ¶ 24.)

24. In late June 2019, Kimberly King ("King"), a representative of VOA, informed Haddock for the first time that Haddock could not participate as a partner with VOA in the development of The Sussex and could not receive cash flows from The Sussex project. (Compl. ¶ 27.) Haddock attempted to negotiate with King; however, VOA Defendants' lawyer sent a letter to Haddock dated August 15, 2019, purportedly pursuant to paragraph 10 of the Interim Agreement, terminating Plaintiffs and VOA Defendants' relationship. (Compl. ¶¶ 27–28.)

25. Plaintiffs contend that Haddock has not been paid sums owed to her for her development efforts. (Compl. ¶¶ 1, 22, 26–31.)

26. On December 13, 2019, VOA Defendants filed articles of organization and formed Sussex VOA. (Compl. ¶ 32.) Five days after the formation of Sussex VOA, VOA acquired the real property comprising The Sussex and the real property was deeded to Sussex VOA. (Compl. ¶ 34.) The property acquisition by Sussex VOA was made possible by Haddock's assignment of the Purchase Options to VOA. (Compl. ¶ 34.)

## IV.  MOTION TO STRIKE

27.    The Motion to Strike requests that the Court strike paragraphs 30 and 31 of the Complaint and not consider the paragraphs in deciding the Motion to Dismiss. Defendants contend that paragraphs 30 and 31 contain settlement discussions that are inadmissible at trial pursuant to North Carolina Rule of Evidence 408.

28.    Pursuant to Rule 12(f), a trial court "may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter."  N.C.G.S. § 1A-1, Rule 12(f).  Whether to grant or deny a motion to strike brought pursuant to Rule 12(f) is within the trial court's sound discretion. *Reese v. City of Charlotte*, 196 N.C. App. 557, 567, 676 S.E.2d 493, 499 (2009).

29.    "Rule 12(f) motions are viewed with disfavor and are infrequently granted." *Daily v.  Mann Media, Inc.*, 95 N.C. App. 746, 748–49, 384 S.E.2d 54, 56 (1989) (internal quotation marks and citation omitted). "Matter should not be stricken unless it has no possible bearing upon the litigation.  If there is any question as to whether an issue may arise, the motion should be denied." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108 (1978).

30.    First, it is unclear at this stage of the proceeding whether paragraphs 30 and 31 would be inadmissible pursuant Rule of Evidence 408, and second, it is unclear whether or not paragraphs 30 and 31 will have any bearing upon this litigation. Accordingly, the Court in its discretion DENIES the Motion to Strike.  *See Bochkis v. Medical Justice Servs., Inc.*, 2016 NCBC LEXIS 90, at *16 (N.C. Super. Ct. Nov. 23, 2016) (denying a motion to strike for the same reasons).

## V. MOTION TO DISMISS

31. In the Motion to Dismiss, pursuant to Rule 12(b)(6), Defendants request that the Court dismiss all claims asserted by Plaintiffs in their Complaint, which Defendants contend includes claims for (1) fraud, (2) breach of duty to partner, (3) breach of contract by repudiation, (4) unjust enrichment, (5) unfair and deceptive trade practices, (6) detrimental reliance, and (7) constructive trust.

### A. Legal Standard

32. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Complaint in the light most favorable to Plaintiffs. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

33. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC.*, 251 N.C. App. 198, 206, 794 S.E.2d

898, 903 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (citation omitted). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citation omitted). Where the Court considers documents that are not specifically referred to, contained in, or attached to the Complaint, the Rule 12(b)(6) motion will be converted into a Rule 56 motion and subject to its standards of consideration and review. *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890–91 (1979).

34. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615, 821 S.E.2d at 737 n.7 (citations omitted).

B.     Analysis

    1.     Fraud

35.     Plaintiffs must allege the five essential elements of a fraud claim: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (citations omitted).  Rule 9(b) requires that a claim for fraud be pled with particularity.  N.C.G.S. § 1A-1, Rule 9(b).

36.     "[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations."  *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). "Dismissal of a claim for failure to plead with particularity is proper where there are no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations." *Town of Belhaven v. Pantego Creek, LLC*, 250 N.C. App. 459, 470, 793 S.E.2d 711, 718 (2016) (citation omitted).

37.     Plaintiffs allege that Defendants "falsely represented or concealed the fact that they never intended to partner with [Haddock] or to pay her the mutually agreed partner compensation that VOA and Mr. Kirkland stated and promised to pay [Haddock], or that they recklessly made such promises."  (Compl. ¶ 44.)  Plaintiffs further allege that Defendants "induced [Haddock] to partner with them and to serve

as their local partner and co-developer to induce her to assign the Purchase Options for the real property in October 2018 . . . without any payment[.]"  (Compl. ¶ 44.)

38. Defendants contend that Plaintiffs' fraud claim is deficient in multiples ways including: (1) "Plaintiffs do not indicate who made a fraudulent representation, when or where they made it, or even what [the representation] was[;]" (2) Plaintiffs' fraud claim cannot be based on a promise of future intent, alternatively, if Plaintiffs' claim is based on a false statement of present intent, Plaintiffs have failed to allege "facts from which a court and jury may reasonably infer that [Defendants] did not intend to carry out such representations when they were made[;]" and (3) "Plaintiffs have failed to show reasonable reliance on any false representations."  (Defs.' Br. Supp. Mot. Dismiss 20, ECF No. 12 ["Br. Supp. Mot. Dismiss"].)  The Court agrees, in part.

39. The allegations in the Complaint make it difficult to discern whether the basis of Plaintiffs' fraud claim is a false representation of past or existing fact or a promissory representation.  The Complaint lacks specific allegations regarding the content of the fraudulent statements, who made the fraudulent statements, or in the event that promissory representations form the basis of Plaintiffs' fraud claim, that Defendants never intended to comply with their stated representations or promises. *See Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *8 (N.C. Super. Ct. Mar. 27, 2018) ("[I]t is permissible to state a claim for fraud based on promissory representations, but to do so, the plaintiff must allege facts from which a court and jury may reasonably infer that the defendant did not intend to carry out such representations

when they were made." (citation and quotation marks omitted)); *see also Hunter v. Guardian Life. Ins. Co. of Am.*, 162 N.C. App. 477, 481, 593 S.E.2d 595, 598 (2004) ("[A] complaint for fraud must allege with particularity all material facts and circumstances constituting the fraud.").

40.     Accordingly, the Court concludes that Plaintiffs have failed to plead their fraud claim with sufficient particularity to meet the heightened pleading standard for a fraud claim.  Therefore, the Motion to Dismiss should be GRANTED and the fraud claim should be DISMISSED without prejudice.[1]

## 2. Breach of Duty to Partner

41.     Plaintiffs allege that "Defendants have held themselves out as partners and co-developers with [Haddock], and as partners Defendants owed fiduciary duties to [Haddock], including a duty of loyalty and a duty to account for all partnership income, expenses, profits and losses, and any distributions owing to [Haddock] as promised to her under the Interim Agreement and the Revised Agreement."  (Compl. ¶ 48.)

42.     "A partnership is an association of two or more persons to carry on as co-owners a business for profit."  N.C.G.S. § 59-36(a).  A partnership can be created even in the absence of an express agreement.  *See Williams v. Biscuitville, Inc.*, 40 N.C. App. 405, 407, 253 S.E.2d 18, 19 (1979) ("A partnership agreement may be inferred without a written or oral contract if the conduct of the parties toward each other is such that an inference is justified." (citation omitted)).

---

[1] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court [.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013).

43.    "[C]o-ownership and sharing of any actual profits are indispensable requisites for a partnership." *Wilder v. Hobson*, 101 N.C. App. 199, 202, 398 S.E.2d 625, 627 (1990).  Plaintiffs fail to allege these indispensable requirements.

44.    Plaintiffs allege that Plaintiffs and VOA Defendants worked together to develop The Sussex; however, these allegations fall short of co-ownership of a business venture.  The Interim Agreement defines the parties' relationship as one between VOA Defendants and Haddock acting as VOA Defendants' independent contractor.  (Compl. Ex. A § 9.)  Plaintiffs fail to allege any express agreement between the parties to operate The Sussex as co-owners.

45.    Accordingly, Plaintiffs' claim for breach of duty to partner as pled is deficient and should be DISMISSED without prejudice.

### 3.    Breach of Contract by Repudiation

46.    To properly plead a breach of contract claim, a plaintiff need only allege "(1) [the] existence of a valid contract and (2) [a] breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  "[S]tating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *11 (N.C. Super. Ct. June 19, 2019).

47.    Pursuant to North Carolina law,

> Breach [of contract] may [ ] occur by repudiation.  Repudiation is a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties.  When a party repudiates his obligations under the contract before the time for performance under the terms of the contract, the issue of anticipatory breach or breach by anticipatory repudiation arises.

*Profile Invs. No. 25, LLC v. Ammons East Corp.*, 207 N.C. App. 232, 236, 700 S.E.2d 232, 235 (2010) (citation omitted).

48. "For repudiation to result in a breach of contract, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute[.]" *D.G. II, LLC v. Nix*, 211 N.C. App. 332, 338, 712 S.E.2d 335, 340 (2011) (quoting *Profile Invs. No. 25, LLC*, 207 N.C. App. at 236, 700 S.E.2d at 235).

49. Plaintiffs allege multiple agreements with VOA Defendants, including the Interim Agreement and the agreement for Haddock to continue to provide development services for VOA Defendants after the expiration of the Interim Agreement. (Compl. ¶¶ 9, 11, 21, 24.) Plaintiffs also allege that Defendants terminated their agreement in writing and that Defendants have continuously and expressly refused to pay Plaintiffs the compensation Haddock is owed. (Compl. ¶¶ 21, 26–31, 66.) These allegations are sufficient for Plaintiffs' breach of contract claim to survive the Motion to Dismiss.

50. Therefore, the Motion to Dismiss to the extent it requests that Plaintiffs' breach of contract claim be dismissed should be DENIED.

### 4. Unjust Enrichment

51. In order to sufficiently state a claim for unjust enrichment, a party must allege: "(1) it conferred a benefit on another party; (2) the other party consciously accepted the benefit; and (3) the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Worley v. Moore*, 2018 NCBC LEXIS

114, at *25 (N.C. Super. Ct. Nov. 2, 2018) (citing *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002)).

52. "If there is a contract between the parties, the contract governs the claim and the law will not imply a contract." *Se. Shelter Corp.*, 154 N.C. App. at 330, 572 S.E.2d at 206. However, a plaintiff may plead unjust enrichment as an alternative claim to a breach of contract claim "even if [the] plaintiff may not ultimately be able to prevail on both." *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006).

53. The Interim Agreement was set to expire on January 31, 2019. (Compl. ¶ 21.) Notwithstanding the expiration of the Interim Agreement, and with the consent of VOA, Haddock continued to perform developer services for VOA. (Compl. ¶¶ 21, 23.) Kirkland advised Haddock to continue to submit invoices for the work Haddock performed after the expiration of the Interim Agreement; however, Haddock has not been paid the sums she alleges that she is owed. (Compl. ¶¶ 1, 22, 26–31.) These allegations are sufficient to form the basis of Plaintiffs' unjust enrichment claim.

54. Defendants contend that an express contract governs Haddock's relationship with VOA Defendants; therefore, Plaintiffs' unjust enrichment claim should be dismissed. (Br. Supp. Mot. Dismiss 24.) However, Plaintiffs expressly pled their unjust enrichment claim in the alternative, which is permitted by North Carolina law. (Compl. ¶ 63.) Therefore, the Motion to Dismiss to the extent it requests that Plaintiffs' unjust enrichment claim be dismissed should be DENIED.

### 5.      Unfair and Deceptive Trade Practices

55.      To state a claim for a violation of N.C.G.S. § 75-1.1 ("UDTPA"), a plaintiff must allege that "(1) defendant committed an unfair and deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.*

56.      It is well-established that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). "[A] plaintiff must show substantial aggravating circumstances attending the breach to recover under the [UDTPA.]" *Id.*

57.      The allegations supporting Plaintiffs' UDTPA claim are conclusory and vague. (Compl. ¶¶ 53–58.)  From the Court's careful review of the Complaint, the only conduct currently actionable based on the Court's ruling herein, is the alleged breach of contract by Defendants and unjust enrichment.  This conduct is insufficient to form the basis of Plaintiffs' UDTPA claim without allegations of an aggravating circumstance. *See Branch Banking & Tr. Co.*, 107 N.C. App. at 62, 418 S.E.2d at 700. The only aggravating circumstance alleged by Plaintiffs is purported fraudulent conduct by Defendants.  However, the Court has concluded herein that Plaintiffs have not adequately alleged this aggravating circumstance.

58. Therefore, the Court concludes that Plaintiffs' UDTPA claim should be DISMISSED without prejudice.

### 6. Detrimental Reliance

59. Plaintiffs assert a claim titled as "Detrimental Reliance." (Compl. ¶¶ 59–61.) Though far from clear, the Court interprets this claim as Plaintiffs' attempt to assert a claim for promissory estoppel.

60. Defendants contend that this claim should be dismissed because "promissory estoppel[ ] is not a recognized cause of action in North Carolina." (Br. Supp. Mot. Dismiss 23.) The Court agrees. *See Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987), *aff'd per curium*, 322 N.C. 107, 366 S.E.2d 441 (1988).

61. As provided in *Value Health Sols. Inc. v. Pharm. Research Assocs.*, 2020 NCBC LEXIS 65, at *35 (N.C. Super. Ct. May 22, 2020), "[i]n the absence of any precedent for permitting a plaintiff to raise promissory estoppel as an affirmative claim for relief, the Court declines to recognize such a claim under the allegations in this lawsuit." Therefore, the Court GRANTS the Motion to Dismiss as it pertains to the claim titled "detrimental reliance" and DIMISSES the claim with prejudice.

### 7. Constructive Trust

62. At the outset the Court notes that Plaintiffs' Complaint does not expressly list a constructive trust as a cause of action. Notwithstanding this fact, Defendants contend that "Plaintiffs' constructive trust claim should be dismissed." To the extent

that the Complaint asserts constructive trust as a claim for relief or a cause of action, the Court addresses Defendants' argument herein.

63. "[A] constructive trust is not a standalone claim for relief or cause of action." *LLG-NRMH, LCC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *14 (N.C. Super. Ct. Oct. 9, 2018). Rather, it is a remedy which may or may not be available depending on the underlying causes of action. *See Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 424–25 (1988). Accordingly, the Court GRANTS Defendants' Motion to Dismiss to the extent it seeks dismissal of Plaintiffs' claim for constructive trust, if any. Notwithstanding the Court's dismissal of any claim for constructive trust asserted by Plaintiffs, the Court interprets the Complaint as requesting a constructive trust as a remedy.

## VI. CONCLUSION

64. For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part the Motions as follows:

A. The Motion to Strike is **DENIED**.

B. The Motion to Dismiss is **GRANTED** in part and **DENIED** in part as follows:

    i. To the extent the Motion to Dismiss seeks dismissal of Plaintiffs' claims for Fraud, Breach of Duty to Partner, and Unfair and Deceptive Trade Practices, the Motion to Dismiss is **GRANTED** and the claims for Fraud, Breach of Duty to Partner, and Unfair

and Deceptive Trade Practices are **DISMISSED** without prejudice;

ii.     To the extent the Motion to Dismiss seeks dismissal of Plaintiffs' claims for Breach of Contract by Repudiation and Unjust Enrichment, the Motion to Dismiss is **DENIED**;

iii.    To the extent the Motion to Dismiss seeks dismissal of Plaintiffs' claim for Detrimental Reliance, the Motion to Dismiss is **GRANTED** and the claim for Detrimental Reliance is **DISMISSED** with prejudice; and

iv.     To the extent the Motion to Dismiss seeks dismissal of Plaintiffs' claim for Constructive Trust, the Motion to Dismiss is **GRANTED** and the claim for Constructive Trust is **DISMISSED** without prejudice to Plaintiffs seeking a constructive trust as a remedy should any of their claims support that remedy.

**SO ORDERED**, this the 22nd day of January, 2021.


/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases